## GOULDING *v*. CLARK.

A book produced, being admitted to contain the ancient records of a proprietary, the recent entries are not admissible in evidence, without proof that the supposed clerk was elected, or, *de facto*, acted as clerk on other occasions.

A tenant in a real action may require evidence that a corporation, whose organization has been lost, has been reörganized according to law, where the demandant claims under a title derived from the subsequent action of the corporation.

Where a corporation has no officer by whom a new meeting can be called, its powers are suspended, or dormant, till it is reörganized under a new charter, or by a meeting called under the statutes, by a justice of the peace.

Under the statute of 1846, a justice has no power to call a corporate meeting, unless upon petition of three or more proprietors.

Under that statute, the warrant must be published in the county where a majority of proprietors are shown to reside.

Under the Revised Statutes, the petition to a justice must be shown to be signed by the proprietors of one twentieth of the corporate property.

The warrant is not evidence of that fact, unless it recites a decision of the justice upon that point, even if it would be in that case.

The records of meetings held forty years ago, upon petition of the father of the present petitioners (whose heirs they are) reciting that he was owner of more than one sixteenth part of the proprietary property, are not evidence of such property against a stranger.

There is no presumption in recent transactions in favor of the authority of a magistrate authorized to act in special cases; the facts which give him jurisdiction must appear.

Where a proprietary vote authorized a meeting to be called by publishing a notice in a newspaper published in Hanover, if any, otherwise in one published at Concord, a warrant requiring a notice to be published at Concord will be insufficient, unless there is evidence that none was published at Hanover.

If a justice, by his warrant, require notice to be published in a newspaper and by posting in town, a notice by posting will be insufficient, although, by a vote of the proprietors, it would ordinarily be sufficient.

Where notice is required to be published, the meeting cannot be held legal without proof of such publication.

THIS is a writ of entry for a tract of land now in Canaan, but formerly within the bounds of Orange, which was first called Cardigan. The plea is the general issue. To maintain his action the plaintiff introduced the charter of Cardigan, granted

in 1769, and proved that the tract in question was part of what was known as common land. He then introduced a deed of the premises claimed in the writ, purporting to be executed to him on the 31st of August, 1854, by " the proprietors of Cardigan, by Wilkes Waldo, their agent," and proved that it was duly executed by said Waldo, the defendant now denying his authority to do any such act.

To prove the authority of said Waldo to execute said deed, the plaintiff offered a book of records, which was admitted to contain the ancient records of the proprietors of Cardigan, and offered to read a vote certified by said Waldo, as clerk of the proprietors, purporting to show that at a legal meeting of the proprietors, on the 18th of February, 1850, Wilkes Waldo was duly appointed agent to sell and deed, in the name of the proprietors, any of the common land owned by them.

It appeared, by inspection of the book, that the proprietors were duly organized under their charter, and had long continued to act, but that there was no record of any proceeding by them from August 25, 1830, to November 2, 1847.

The defendant objected that after a lapse of this term of about seventeen years, without any act or record, there is no presumption that the entries subsequent to that time are the true records of the doings of the proprietors. The court overruled this exception.

The defendant farther objected, that if the recent record be presumed to be the true record of the proprietary, that the presumption is rebutted in this case by the following facts appearing by the records themselves, which show that the meeting under which the plaintiff alleges that the proprietors organized anew in 1847, and have continued their organization to the present time, cannot have been a legal meeting of the proprietors, and this cannot be a true record of the proprietary, and so the plaintiff has no legal evidence of the vote proposed to be proved.

The meeting of November 2, 1847, appears by the writing in said book to have been called by a justice of the peace. The application to the justice is alleged to have been signed by

Wilkes Waldo and Zeruah Waldo, and no other persons, as proprietors of Cardigan ; and the order thereon for notice was for publication in the New-Hampshire Statesman, published at Concord ; and it was objected that the application was irregular, because it was signed by but two persons, whereas the statute then in force (see Comp. Stat. 365, sec. 28) authorizes no notice by a justice of the peace for a meeting, unless on application of three or more proprietors.   It was objected, also, that the order of notice was irregular and illegal, because it was for publication in Merrimack county, and not in Grafton, where it was admitted that both signers of the application to the justice resided.   It was also objected, that it appears by the charter that these signers were not original proprietors, and that there is no evidence, nor legal ground for presumption, that they were proprietors when they signed said application.

Upon this latter objection, evidence was admitted, showing that said Wilkes and Zeruah Waldo were children and heirs at law of Nathan Waldo, an original proprietor of one share, and that said Nathan died some years ago, having been many years a town pauper, and that Zeruah, his daughter, had also been aided by the town.

There was no evidence that said Wilkes Waldo was clerk of the proprietors, except what is furnished by the book, and the evidence of a witness, who testified that he went to Orange in 1808, and had attended meetings of the proprietors of Cardigan, or Orange.; that they had several acting clerks ; that Nathan Waldo, Jr., acted as such, and Thomas Wood ; that he lived in the house with Thomas Wood two years, and while he lived there with him the proprietors had a book of records, and he had seen it several times, and that the book here produced he has no doubt is the same ; that Nathan Waldo, Jr., and said Wood were both dead ; that he had seen Wilkes Waldo present with this book, and other persons present with it at the same time ; he saw it once at November court, when he (said Wilkes) and others were there ; he was there with it, and called it the proprietors' book ; others were present ; that witness had no

recollection of seeing it in said Wilkes' possession at other times. On cross-examination, he said he saw the book at November term; that he did not recollect seeing it in the possession of Wilkes Waldo, as he knew of; Esq. Kittredge had it; it was there openly, the same as here; he did not recollect who brought it there. On reëxamination he said that he saw Mr. Bryant, plaintiff's counsel, and others, and Mr. Kittredge and said Wilkes, at East Lebanon, within two years, and this book was there on the table and open.

The plaintiff relies upon the record of the vote aforesaid, and contends that the regularity of the prior proceedings cannot be questioned by the defendant here, said vote appearing on the record book of the proprietors.

The foregoing objections of the defendant were sustained by the court, and a verdict taken for the defendant, subject to the opinion of the court.

It was agreed that either party, at the argument, may refer to any part of said proprietors' book of records.

*Kittredge* and *Quincy*, for the plaintiff.

It appears by the books of records of the proprietary that the meeting of November, 1847, was called in the usual manner in which meetings of that proprietary had before that time been called. It does not appear by the records that any annual meeting was ever called. It was the usage of the proprietors to call special meetings in the same manner as this was called, and therefore it is to be taken that this was the form adopted by the proprietors in calling special meetings. There was no failure to hold their annual meeting, and there was a mode of calling special meetings adopted by the proprietors, and therefore the law of 1846, chapter 334, to which reference is made in this case, does not apply. This law was additional to the law before in force on the subject of calling meetings of proprietors of common lands. It does not provide that the mode there prescribed should be the only mode of calling such meetings, even in the cases there mentioned. It repealed no law, and took

away no right then existing, but conferred a new one. By the 143d chapter of the Revised Statutes, no provision was made relative to calling either annual or special meetings. The law of 1846 enacts, that in certain cases three or more proprietors may apply to a justice to call a meeting, but the provision of the Revised Statutes, chap. 146, secs. 11 and 12, under which, and the usage of the proprietary, the meeting of 1847 was called, are as necessary since the statute of 1846 as they were before.

The notice required by the act of 1846 was necessary only when the meeting was called under the provisions of that act. The vote authorizing the conveyance to the plaintiff was passed at a meeting held in February, 1850. Several meetings were held between the one held November 7, 1847, and that of 1850, and this meeting was called in the same way that meetings before that time had been called. Wilkes Waldo had acted as clerk at these meetings, and he was then the recognized clerk of the proprietors, acting under color of an election. The regularity of the election, or qualification of an officer *de facto*, who is in under color of an election, cannot be drawn in question in an action in which he is not a party. *Bean* v. *Thompson*, 19 N. H. 294.

The meeting being regular and legal on the face of the records, the defendant, having no title, cannot call in question the validity of the proceedings of the meeting of 1847, nor that of 1850. The records were evidence of all they contained against the proprietors, and any one who shows no title. It was not necessary for the plaintiff to show that the meeting was legal, or that the petitioners for the meeting were the owners of one twentieth of the shares. *Atkinson* v. *Bemis*, 11 N. H. 44; *Cobleigh* v. *Young*, 15 N. H. 493; *Thompson* v. *Carr*, 5 N. H. 510; *Sumner* v. *Conant*, 10 Vt. 9–19; *Sawyer* v. *Newland*, 9 Vt. 385; *Copp* v. *Lamb*, 12 Me. 312; *Davies* v. *Morrison*, 4 Pick. 156.

*C. R. Morrison*, for the defendant.

The entries after 1830 are inadmissible. There is nothing to

authenticate them, except that they are found in a book, which also contained the records of the proprietors down to 1830, and they are certified by Wilkes Waldo as clerk ; but the mere fact that they are found in such a book does not make them, even presumptively, the doings of the proprietors ; more especially as there had been no proceedings for seventeen years. There is nothing upon the book, before or after, to give them any sanction as acts of the proprietors. The meetings are recent. It does not appear whether they were all made at the same time or at different times. It cannot be assumed that they were made at different times, if that fact would make any difference, which we do not admit. If any presumption could arise in their favor ; if, as in Atkinson *v.* Bemis and Cobleigh *v.* Young, they were certified by one proved or admitted to have been *clerk,* or if their presence upon the book were not accounted for, no such presumption can arise in this case, since they are shown to have been made by an unauthorized person. They are certified by Wilkes Waldo, and before *his* entries can be deemed, even presumptively, the records of the proprietors, it must be shown by evidence, *aliunde,* that he is at least an acting clerk, under color of an election. *Whitehouse* v. *Bickford,* 9 Foster 480 ; *Woods* v. *Banks,* 14 N. H. 101 ; *State* v. *Wilson,* 7 N. H. 543 ; *Turnpike Co.* v. *McKean,* 10 Johns. 154 ; An. & Am. on Corporations 605, sec. 17.

2. The entries, if competent, show that the meetings were illegal. The four points first made by the plaintiff are not supposed to be in accordance with the facts, and no reference is made to any particular page or pages of the book, to substantiate either of them.

Sections 11 and 12 of chapter 146 of the Revised Statutes did not apply to the case of proprietors of common lands, which was taken up in chapter 143. If they did apply they were superseded by the act of 1846, upon the subject of proprietary meetings, which covers the whole ground. *Leighton* v. *Walker,* 9 N. H. 59.

No meeting can be called in the cases provided for by the act

of 1846, except in the mode directed by that act. The meetings were not called by the owners of one twentieth. If incumbent upon the defendant to prove the negative, the case shows that he introduced sufficient evidence upon that point to shift the burden of proof. 1 Greenl. Ev. 127, sec. 78.

The vote was not passed at a meeting held in accordance with any law of the State, or any legal vote of the proprietors.

BELL, J. A question is made whether proper evidence was offered that the books relied on in this case were the books of record of the proprietors of Cardigan; and we take the rule to be that if *prima facie* evidence is introduced that the books produced are the records, and the entries of a recent date were made by one who was acting clerk, claiming to be such by virtue of an election to the office, they are admissible in evidence. The book here produced was admitted to contain the ancient records of the proprietors of Cardigan, and was otherwise sufficiently proved to be such. The objection made is to the admission of the more recent entries. As to them no evidence was introduced, beyond the books themselves, as to the official character of the party who assumes to act as clerk in making these records. In the case of proceedings of an ancient date, it might be presumed, from the regularity of the subsequent proceedings, from the acquiescence of parties interested, or from other circumstances, that the records upon the books of a proprietary were made by the clerk, either duly elected, or *de facto* exercising the office, but no such presumption can be properly allowed where the transactions recorded are of recent date, and the facts admit of ready proof. It was therefore necessary to introduce some evidence tending to show that the supposed clerk acted as such under claim of an election to the office, beyond the mere fact of making the records in question. It has, we think, always been required, in order to prove a person to be an officer *de facto*, to show that he has acted as such on other occasions than those which are the subject of the controversy. *State* v. *Wilson*, 7 N. H. 546. No such evidence being introduced here, the entries made by Wilkes Waldo were not admissible as records of the corporation.

Goulding *v.* Clark.

It is said the meetings of the proprietors, if upon their face regular and legal, cannot be called in question by the defendant, who shows no title. But this objection seems to us mistaken. The cases referred to in the argument, in which it is held that a trespasser, who does not appear to have any interest in the title, cannot require proof that the meetings were regularly held, differ from the present, because in those cases a certified copy of the vote relied on was produced, and the question was if the party was bound to go farther and show the regularity of the meeting, while here the entire record is produced, and "it is competent for the defendant to impeach the correctness of the record, or to show that the meeting at which it was passed was not organized in such a manner as to render its acts of any validity." *Cobleigh* v. *Young*, 14 N. H. 503. It may well be doubted if an extract of a record is admissible, if seasonably objected to, unless it appears to contain all that is necessary to enable the court to judge of its validity. *Woods* v. *Banks*, 14 N. H. 109; *Whitehouse* v. *Bickford*, 9 Foster 471.

But however this may be, the decisions referred to have no application to the case of a tenant in a real action. He is alleged in the writ to be in possession, though wrongfully, and by his plea he admits he is in possession, while he denies the wrong imputed to him. The tenant's bare possession is a good title against all the world, except the person who can show in himself a better right. *Lund* v. *Parker*, 3 N. H. 49. The burden is on the plaintiff to show himself to have a good title against the defendant. He is to recover upon the strength of his own title, and not upon the weakness of the defendant's. *Atherton* v. *Johnson*, 2 N. H. 35. It avails nothing to show a better right in a third person. *Bailey* v. *March*, 3 N. H. 274; *Propr's* v. *Permit*, 8 N. H. 512.

The party in possession is presumed to hold by the assent of the owner, or in subordination at least to his rights, and is not to be disturbed by a stranger. The plaintiff, by showing that the land demanded was a part of the common lands of the proprietors of Cardigan, has not impeached the defendant's title. He

must show a title in himself. To do this he offers what he claims to be a deed from those proprietors, but it is signed by an attorney, and his agency is denied. To prove his deed the authority of the agent must be shown. A book of records of the proprietors is produced, containing what purports to be a record of a vote of the proprietors constituting such agent. These proprietors, like other corporations aggregate, can act so as to affect their real estates only by their votes, passed at meetings legally called, and recorded by a clerk, who can only be elected at such a meeting. The defendant denies there was any such meeting, or any clerk authorized to make such a record. He has a right to insist that the plaintiff shall make out his case in this respect, as he would have a right to require an agent's power-of-attorney to be produced or proved before the deed he has assumed to execute shall be admitted as the deed of his principal.

The attempt to establish by the records the validity of the vote appointing an agent to sell, raises the main question of the case, which is, the legality and sufficiency of the notice of the meeting of the proprietors of Cardigan, alleged to be holden Nov. 2, 1847. These proprietors, it seems, had kept up their organization till 1830. After that time no meetings were held, and it must be assumed, in order to support any meeting called by a justice of the peace, that, by death or otherwise, the power to warn a new meeting, or to elect the officers necessary to preserve the organization, was lost. At common law, by such a state of facts the corporate body was dissolved, or at least its powers were so far suspended that it could not be revived, and again put in action, in any mode but by a new charter. *King* v. *Pasmore*, 3 D. & E. 199; *Phillips* v. *Wickham*, 1 Paige 590; 2 Kent Com. 308; Ang. & Ames on Corp. 737. To remedy the necessity for a new charter, the statutes were passed providing for the warning of a meeting by a justice of the peace. Between the disorganization of a corporation by the loss of its power to act as such, and the reörganization under the statute, the corporation is absolutely without power to act, as at common law. It is therefore essential to be shown, where such disorgan-

Goulding *v.* Clark.

ization has occurred, that the corporation has been duly reörganized agreeably to the statutes, unless in cases where some presumption may be properly entertained ; because, without it, the corporation is dormant at least, and all its supposed acts are merely invalid and inoperative.

At that date there were two statutes in force authorizing a justice of the peace to issue a warrant for calling a meeting of the proprietors of common lands, in cases where there was no mode of calling a meeting by the officers of the proprietary, which was the case here, there having been no meeting since 1830, and the last clerk elected having deceased.

The statute of 1846, (Comp. Stat. 365, sec. 28,) provides that when, by mistake or accident, the proprietors of common lands in this State shall have failed to hold their annual meeting, or where no mode for calling special meetings shall have been provided, &c., three or more of the proprietors of said common lands may apply in writing to any justice of the peace in this State, requesting him to call a meeting of the proprietors of said common lands. And such justice of the peace shall thereupon issue his warrant, calling the meeting requested in such application, at such time and place, not inconsistent with the provisions of this chapter, as he may judge proper, which application and warrant shall be published three weeks successively prior to holding such meeting, in some newspaper printed in the county in which a majority of such proprietors shall reside, &c.

In this case a petition was presented to a justice, requesting a meeting to be called, but it was signed by two persons only, claiming to be proprietors, when the statute requires three or more. A warrant was issued requiring a meeting to be notified, by publication in a newspaper, printed at Concord in the county of Merrimack. This statute required the publication to be in a newspaper printed in the county in which a majority of such proprietors shall reside. The evidence shows that the petitioners resided in the county of Grafton, so that if the words, *such proprietors*, referred to them, the warrant was published in the wrong county ; while, if the same words apply to the whole body

of proprieters, there is no evidence that any of the other propri-
etors resided in the county of Merrimack. Besides this, the
records and the case afford no evidence that the notice was in
fact published in any newspaper.

The meeting of 1847 cannot be held a legal and valid meeting
under the statute of 1846.

By the Revised Statutes, chap. 147, secs. 31, 32, (Comp. Stat.
318,) it is provided that if any corporation other than a town
shall fail to hold its annual meeting, or if no mode of calling a
special meeting of such body politic or corporate is prescribed,
the owner or owners of one twentieth part of the stock or prop-
erty thereof may apply in writing to any justice of the peace,
which application shall state the time and place and purposes of
such meeting, to call a meeting of the members of said corpora-
tion. Such justice shall thereupon issue his warrant, directed to
any one of said applicants, requiring him to warn a meeting of
such corporation, to meet at the time and place and for the pur-
poses mentioned in such application, by publishing a copy of
such application and warrant, fourteen days, in the same manner
as is provided for warning the annual meeting of said corpora-
tion ; and it is provided " that such meeting, and all business
done thereat, shall be as valid as if held and done according to
the charter and by-laws of such body corporate."

Several objections are suggested to the validity of the sup-
posed proprietary meeting under this statute.

In the petition to the justice the signers set forth that they
were owners of more than one sixteenth part of the original pro-
prietary rights of Cardigan, and that they were children and
heirs of Nathan Waldo, deceased. It is objected, that there is
no evidence, nor legal ground of presumption, that they were
such proprietors. It was proved that they were the children
and heirs at law of Nathan Waldo, who appeared by the charter
to be an original proprietor of one share. No evidence of any
greater interest was offered, except the following. It appeared
by the records of the proprietary, which have been laid before
us according to a provision of the case, that a meeting of the

proprietors was called by the clerk, upon the petition of Nathan Waldo, who represented himself to be owner of more than one sixteenth part of the land in said town, in August, 1815, and another in October, 1817. It is suggested that this record is competent evidence that he was then owner of the number of shares he claimed. But we think it is too clear to be questioned, that neither the declarations of Nathan Waldo — for the allegations of the petition are nothing more — nor the assent of the clerk to call meetings upon such application, nor the action of the proprietors in attending such meetings, are admissible in evidence; that what he asserted was true against the defendant, who, for any thing that appears by the case, is a stranger to the title of both. As against persons claiming under subsequent grants of the proprietors, it might be presumed, as to transactions of so early a date, and in support of the meetings then held, that they were regularly called, if it appeared that the subsequent proceedings had been regular, and the titles depending upon their validity had been held without question ; but no facts of this kind appear in this case.

The burden was on the plaintiff, who claims, under subsequent proceedings of the proprietors, to show that the justice was authorized to issue a warrant, by an application properly signed by persons owning one twentieth of the property. There is no presumption in favor of the jurisdiction of inferior courts, or magistrates, or persons vested with special powers, but their authority must be shown. *People* v. *Koeber*, 7 Hill 41 ; *Morse* v. *Presby*, 5 Foster 299. These are cases where it is held that if the facts upon which the authority of a magistrate depends have been made the subject of an express decision by him, that decision is binding. See *Morse* v. *Presby*. But this principle, if applicable in any case of this kind, does not apply here, because the justice does not, as has often been done, allege in his warrant that the facts stated in the petition have been proved, but it is cautiously said, " Whereas you, (Wilkes Waldo, to whom the warrant is directed,) and Zeruah Waldo petitioned to me, J. K., a justice, &c., your petition, setting forth that you are

Goulding *v.* Clark.

owners of one sixteenth part of the original rights of the proprietors of Cardigan, alias Orange, requesting," &c. It shows no decision, nor enquiry, in relation to the amount of the petitioner's interest.

It is objected, that the warrant issued by the justice did not require notice to be published according to the statute, " in the same manner required for warning the annual meeting of said corporation." The Revised Statutes contain no provision for warning the annual meeting, and we are therefore driven to examine the earlier laws and earlier action of this proprietary, to learn what was, at the passage of the Revised Statutes, the legal manner of warning such meeting.

By an act passed July 3, 1781, (Laws 1830, p. 110,) and which continued in force till 1843, a mode was provided for calling proprietary meetings in cases where no mode was agreed upon by the proprietors, by an application to a justice by the owners of one sixteenth of the property, and the notice was required to be printed in the New-Hampshire Gazette, and posted in the town three weeks successively before the day of meeting. The proprietors were also authorized at any legal meeting to agree upon a mode of calling their meetings. Under this statute the notice was of course insufficient, because it was not published in the prescribed newspaper.

We have examined the records of these proprietors to ascertain what provision they had made relative to their meetings. The grant of the township was made in 1769, and the first meeting was called by a justice, and held in that year, and a first division of 100 acres was drawn to each of the 102 shares of the proprietors. At meetings in 1774 and 1794 votes were passed, prescribing the mode of calling proprietary meetings ; the first requiring notice in the Portsmouth Gazette, and the latter notice in the Eagle, or one of the Concord newspapers, and posting up in some public place in Orange, which had become the name of the town. In January, 1800, a meeting was warned by the clerk elected in 1798. The warning recited an application by the owners of one sixteenth part of the proprie-

tors' rights, and contained an article " to determine what method the proprietors will adopt for warning proprietors' meetings in future," and at an adjournment of this meeting in September, a vote was passed, which conformed to the general statute, and to the last vote on the subject, except that it required the notice to be published " in the newspaper printed at Hanover, if any such may be printed there, and otherwise in a newspaper printed at Concord, and posted up in some public place in the town of Orange."

It is said in the record that the meeting was held agreeably to the preceding notification, but nothing appears relative to its posting or publication ; still we think we may properly assume that every thing was rightly done, and the proceedings regular, because no exception appears to have been taken to it ; all the subsequent proceedings seem founded upon it. The interest of the proprietors seems to have been kept up to that time, ninety-four votes having been cast at a meeting in 1798, and a dividend of 100 acres to a share made in May, 1800, and more than half a century has since elapsed. *Adams* v. *Stanyan,* 4 Foster 416 ; *Society* v. *Young,* 2 N. H. 310.

A meeting was warned and held in October, 1817, upon the application of Nathan Waldo, representing himself as the owner of more than one sixteenth of the proprietary, as before stated. The notice contained an article " to confirm and establish, or alter any former votes," but nothing more directly relating to the meetings of the proprietary. After many adjournments, it was voted at an adjourned meeting in October, 1820, " that proprietors' meetings in future be warned on application of owners of more than one sixteenth part of said proprietors' lands ; a notification shall be set up, where warnings for town meetings are posted up, fourteen days before the time of holding said meeting, and such notice shall be considered sufficient, being signed by the clerk."

The meeting of 1847 must be supported under one or the other of these votes. The last vote does not conflict with that of 1800, and does not necessarily operate as a repeal of it, since it merely

declares a notice posted in town to be sufficient. The order of the justice required notice to be posted up in some public place in the town of Orange three weeks before the day of meeting, and the record shows that it was posted on the door of the meeting-house from the 4th of October to the 2d of November. If the warrant had required nothing more than posting, it might perhaps be contended that the order was sufficiently complied with, but it did not stop there. It was evidently designed to be issued in conformity to the vote of 1800, and required publication in a newspaper, and we are of opinion that the justice might properly exercise a discretion in requiring notice by publication in a newspaper, and that having made his order in that form no other mode of warning would be sufficient, and the notice by posting alone was invalid.

Two objections exist upon the evidence to the validity of the meeting, if regarded as called under the vote of 1800. The order requires the notice to be published in a Concord newspaper, but the vote required it to be published " in the newspaper printed at Hanover, if any such may be printed there, otherwise in a newspaper printed at Concord," and the case affords no evidence that there was not a newspaper printed at Hanover. And as we have before stated, neither the case nor the record afford any evidence that the notice ordered by the justice was published in any newspaper. No presumption can be made, in the absence of evidence, that the order was complied with, in reference to a transaction of so recent a date as 1847.

The objections to the plaintiff's evidence being fatal, there must be　　　　　　　　　　　　　　*Judgment on the verdict.*