## POWELL *vs.* STEWART ET AL.

1. Where a party has availed himself in a court of law of a defence, which may be properly tried in that court, and failed for want of proof, he cannot retry the same matter in a court of equity, without showing some special ground for its interference.

2. Mutual accounts between the parties, if they are not complicated, do not furnish a sufficient ground for overhauling a judgment at law,—more especially, when they have been submitted to, and passed upon by the common law court.

3. A court of equity will not relieve against a judgment at law, on the ground, that a witness for the defendant did not testify on the trial to material facts within his knowledge, and as to which he was not examined, where, by the exercise of proper diligence, the defendant could have ascertained what the witness knew, in reference to the matters in controversy.

4. Where a defendant at law desires a discovery from the plaintiff, he should file his bill, or exhibit interrogatories under the statute, whilst the cause is at issue. If without doing so, he take the chance of success in a trial at law, he must abide its judgment, unless some other special ground of relief is shown, authorising a resort to a court of equity.

5. The death of the original counsel employed in the defence of a cause, and the want of familiarity, on the part of the counsel that succeeds him, with the grounds of defence, do not furnish a sufficient reason for the interference of a court of equity with the judgment at law.

Error to the Chancery Court of Dallas. Tried before the Hon. Wilie W. Mason.

APPEAL from an order dissolving the injunction. The bill alleges that John H. O'Neal and Charles Goodwyn, partners under the name and style of O'Neal & Goodwyn, instituted suit against the complainant on an open account, for the use of Sam-

uel M. Stewart, in the Circuit Court of Dallas, which suit was tried at the spring term 1846 of said Circuit Court, and a recovery had for only seven dollars; that at the same term, upon the motion of the attorney for the plaintiffs, the court, without notice to himself or his counsel, and in the absence of both, granted a new trial; and that at the spring term 1847 of said court, the case was again tried and to the utter astonishment of the complainant the jury returned a verdict against him for seven hundred and thirty-four dollars. The bill also alleges that the account for which said judgment was rendered is unjust and unfounded; that O'Neal & Goodwyn were the factors and commission merchants of complainant in the city of Mobile, and in that capacity were in the habit of selling his cotton and purchasing for him his supplies; that before the transfer of the account to Stewart, one Curry, a clerk in the employment of O'Neal & Goodwyn, presented said account to him for payment, when he denied its correctness and exhibited to Curry an account, rendered a short time before, so utterly at variance and inconsistent with the one then presented, that he at once admitted its incorrectness and stated that when complainant visited Mobile and should see O'Neal it would be settled satisfactorily; that said account, previously rendered, stated the balance due by the complainant, on the 21st of January 1841, at $71 43, whereas that presented by Curry stated it at $380 15 on the same day; that an item of $250, charged as cash paid on the 21st January 1841, to "Capt. Porter," is incorrect, no such payment ever having been made for him by O'Neal & Goodwyn; that an item in said account of $250 charged as paid on the 27th January 1841, to Green Underwood, is incorrect; that complainant and his brother Abram Powell, being in Mobile, complainant applied to O'Neal for a loan of $250 to pay to Green Underwood, but O'Neal not having it, proposed that inasmuch as Goodwyn and himself were or would be indebted to a steam boat called the "North Star," of which complainant's said brother was a part owner, he would accept a draft in favor of Green Underwood for $250, at fifteen days date, provided the said brother of complainant would agree that the sum due or to become due to said boat should be applied to the payment of said draft, which proposition was acceded to, and the draft accordingly drawn by the complainant on O'Neal & Goodwyn; that at the time of this transaction the said brother

of the complainant was indebted to complainant in the sum of four hundred and forty or fifty dollars, and it was understood between all the parties that the said sum of $250 was to be settled in the manner proposed, and that the complainant was not to be looked to for the payment thereof; and that on or about the 6th of January 1841, O'Neal & Goodwyn sold for the complainant twelve bales of cotton, the nett proceeds of which amounted to $493 07, and which they should have applied as a credit in favor of the complainant, but. which they have failed to do, &c. The bill further alleges that Hudson Powell informed complainant that Stewart before he accepted the transfer of the account was cautioned against purchasing it, and told that its payment would be resisted; that on the last trial, greatly to the surprise of the complainant, his testimony was objected to and excluded, so far as it went to show the declarations of O'Neal after the transfer of the account, and complainant supposing at the time that said Hudson Powell's knowledge of the matter was derived from O'Neal alone, did not examine him further, but he has since discovered that it was Hudson Powell himself who cautioned Stewart against purchasing the account; that in consequence of this mistake he was deprived of the benefit of this testimony; that a discovery from the said Stewart and O'Neal & Goodwyn is essential to the protection of his rights, which discovery this court alone is competent to afford him; and that between the first and second trial of said cause, his original counsel died, and he was compelled to employ other counsel, residing out of the county, with whom he could seldom meet, and who did not have time or opportunity to make himself familiar with the facts of the case, and the grounds of his defence, before the trial of the cause. The bill prays that an account be taken and that the mutual accounts and dealings between the complainant and O'Neal & Goodwyn, who are stated to be insolvent, may be adjusted and settled, and the collection of the judgment at law may be perpetually enjoined. Stewart and Goodwyn alone are made defendants, O'Neal having died before the filing of the bill. Stewart answered the bill, denying all its material allegations, and a decree *pro confesso* was taken against Goodwyn, who had removed from the State.

J. P. SAFFOLD, for the appellant.

1. "As a general rule, a court of equity will not interfere to

relieve a defendant who has neglected to make his defence at law; but if he did not know of his defence until after judgment, a court of equity will relieve."—Hubbard v. Hobson, 1 Breese 147; 2 Eq. Dig. 113, § 10. "If a trial at law be final in its nature, and injustice be done to either party without any default in him, either in his pleadings or in producing proof in his power to produce, equity will then interfere."—3 Hayw. 88, 210, 219, 305; 2 Eq. Dig. 113, § 17. "Where the party's remedy, though adequate at law, was not ascertained nor understood at the time of the trial there, the jurisdiction of equity is maintainable."—Bynum v. Sledge, 1 St. & Por. 135.

2. "A set-off in equity is allowed only when it appears that there is some obstruction to the recovery of the demand at law, or there is an agreement to set-off, or a connection between the demands, or other circumstance to give the chancellor jurisdiction."—Pribble v. Taul, 7 Monr. 456-7; Noland v. Johnson, 1 J. J. Marsh. 10; 2 Eq. Dig. 24." "Although chancery has sometimes exercised the power of decreeing a set-off, independent of the statute, it has only done so where there was either an express or implied agreement of stoppage *pro tanto*, or mutual credit.—Hacket v. Connett, 2 Edwards 73; 2 Eq. Dig. 95, § 43; Cummins v. White, 4 Blackf. 356; French v. Garner, 7 Port. 549. Courts of equity have jurisdiction concurrently with courts of law of matters of account, and a party does not lose his right to be heard in equity in such case by being sued and submitting to a judgment without defence at law.— Power v. Reader, 9 Dana 10. Where a special agreement is alleged to exist, to allow a note held by a defendant, but which would not be a good set-off at law, and it is doubtful whether the agreement could be enforced except in a court of equity, there would seem to be a good ground for equitable interference.—French v. Garner, 7 Port. 549, 555.

3. "In cases of mutual debts, the inability of one of the parties to pay gives jurisdiction to chancery *per se*. The proper relief in such cases is a decree of set-off as far as one debt will extinguish the other, &c."—Rouzee v. Gregg, Litt. Sel. Cases, 488; 2 Eq. Dig. 93, § 30. The mere insolvency of a party entitles his debtor to a set-off in equity of a cross demand, which would not otherwise be an available set-off.—Stewart v. Chamberlain, 6 Dana 32.

4. "Injunction may be dissolved on answer of *one* defendant, if he alone is charged with a knowledge of the facts."—Long v. Brown, 4 Ala. Rep. 622 ; Dunlap v. Clemens and others, 4 ib. 622. Here Stewart is not charged with a knowledge of the facts. "Where the equity of an injunction bill is not charged to be in the knowledge of the defendant, and the defendant merely denies all knowledge and belief of the facts alleged therein, the injunction will not be dissolved on bill and answer alone."—Rodgers v. Rodgers, 1 Paige 426.

EVANS, contra:

1. All the material allegations of the bill are met and denied by the answer of the defendant, Stewart, who is the only party interested, and the only one on whom the injunction could operate.—Dunlap v. Clements et al., 7 Ala. 539.

2. There is no equity in the bill. Repeated adjudications of this court, from the earliest period of our judicial history to the present time, present an unbroken series of decisions in opposition to the supposed equity of complainant's bill.—Vide Mc-Grew v. Tombeckbee Bank, 5 Port. 547 ; Mock v. Cundiff, 6 ib. 24; French v. Garner, 7 ib. 549; Drew v. Hayne, 8 Ala. 438 ; Stennett & Townsend v. Branch Bank at Mobile, 9 Ala. 120; Br. Bank at Mobile v. Tilman, 10 Ala. 149 ; Jones and Spence v. Kirksey, ib. 579 ; Mallory et al. v. Matlock, ib. 595 ; Governor, use &c. v. Barrow, 13 Ala. 540 ; English et al. v. Savage et al., 14 ib. 342; Lockard v. Lockard, 16 ib. 423; Naylor v. Phillips, 2 St. & Por. 58 ; Jones v. Watkins, 1 Stew. 81; Lucas v. Bank of Darien, 2 Stew. 280 ; Moore v. Deal, 3 ib. 155 ; Isbel v. Morris & Bell, 1 ib. 107; Hill v. McNeil, 8 Port. 432 ; Cullum v. Casey & Co. 1 Ala. 103 ; Lee & Norton v. The Insurance Bank of Columbus et al., 2 ib. 21; Pharr & Beck v. Reynolds, 3 ib. 521.

3. When courts of law and equity have concurrent jurisdiction, and a defendant elects to defend at law and fails, he will not be permitted afterwards to apply to chancery, unless such failure has resulted from unavoidable accident.—Thomas and Harris v. Hearn, 2 Por. 262.

CHILTON, J.—We have carefully examined the bill and answer in this cause, and are well satisfied that the decree of the

chancellor is sustained by many adjudged cases, both in this and other courts. The appellant made full defence at law, and a judgment was rendered upon the verdict of the jury against him. The defence was such as might well have been made in the law court, and evidently failed for want of proof. The effort now is to renew the litigation in equity, and many reasons are attempted to be shown by the bill, why this should be done. Without stating them particularly, as they will be seen in the statement of the case, it is sufficient to say, they fail entirely to take the case without the influence of several decisions of this court, adverse to the complainant.—Moore v. Dial, 3 Stew. 155; Standifer v. McWhorter, 1 ib 532; Naylor v. Phillips, 2 Stew. and Por. 58; McGowan v. Young, ib. 160; Mock v. Cundiff, 6 Por. 24; Knotts v. Tarver, 8 Ala. 743; French v. Garner, 7 Por. 549; English et al. v. Savage et al. 14 Ala. 345; Lee & Norton v. The Bank of Columbus, 2 ib. 21; Governor use v. Barrow, 13 Ala. 540; where the authorities are cited.

If it was agreed that the owner of the steam boat "North Star" should pay the draft for $250, and that O'Neal & Goodwyn should not look to the complainant for it, and this was consented to by all the parties, this was a sufficient answer at law to this part of the account.

2. The ground alleged of mutual accounts cannot avail, since it is quite clear that they were not at all complicated—that the court of law could give adequate relief, and especially since they were submitted to and tried by the law court.

.3. We do not think the testimony of Hudson Powell, said to have been discovered since the trial, could have had any material bearing on the cause in the court below. It was not material whether Stewart was or was not cautioned in regard to the purchase of the account, or whether he was or was not apprised when he purchased it, that its payment would be resisted. His purchase left the legal rights of the parties to the suit, in respect to all payments, discounts, and setts off, acquired before notice of the assignment, the same as if such purchase had not been made. The cases of Drew v. Hayne, 8 Ala. 438, and McGrew v. The Tombeckbee Bank, 5 Pr. 547, show that the equity of the bill cannot be maintained upon the allegations in respect to the proof of Hudson Powell. See also Governor v. Barrow, 13 Ala. 542-3.

4. If the defendant below had desired a discovery in aid of his defence at law, he could have filed his bill, or exhibited interrogatories under the statute, but having elected to defend without doing so, it is too late after a judgment has gone against him, —after he has taken the chance of success at law and failed, for him then to invoke the aid of chancery, without showing some sufficient excuse, and which this bill fails to show.—Hill v. McNeill, 8 Por. 432.

5. The excuse that the counsel originally employed had died, and that he employed counsel, who resided out of the county, with whom he could seldom meet &c,, and who, for that reason, was not familiar with his grounds of defence, furnishes no reason for opening or overhauling the judgment at law. If after the death of his leading counsel those who succeeded him had not time before the court came on, properly to inform themselves of the merits of the controversy, we must presume the court upon this showing would have granted them time, if it had been desired. But no application for further time was made.

The whole case made by the bill shows, that the effect of overhauling the judgment at law would be to re-try in equity what has been already tried at law, and what the latter court was competent to try. The authorities above cited abundantly show that this is not allowable.—Lockard v Lockard, 16 Ala. 430. In this view of the case also, the non-residence of Goodwyn becomes wholly unimportant. If however, we were to concede that the injunction was properly granted in the first instance, yet upon the bill and answer of Stewart we think the court properly dissolved it. There are several controling circumstances in the cause, aside from the consideration of the equity of the bill, which justify the action of the chancellor. The twelve bales of cotton, which the bill seeks to obtain credit for, appear by the exhibits to the bill to have been credited, and the alleged conflict between the two accounts rendered is explained by the dates, as appears on their face. As to complainant's draft on O'Neal & Goodwyn in favor of Green Underwood, the singular fact that the complainant should be the drawer when Abram Powell and not himself was to pay the draft, and when it is shown that Abram Powell was present at the time and is no party to it, is left wholly unexplained. These, with other facts which it is un-

necessary particularly to enumerate, satisfy us fully of the correctness of the chancellor's decision. But we entertain no doubt upon the other ground. Let the decree dissolving the injunction be affirmed.