## McMILLAN v. FORSYTHE et al.

No. 2624.   Decided December 3, 1915.   Rehearing Denied February 11, 1916.   (154 Pac. 959.)

1. APPEARANCE—GENERAL DEMURRER—"GENERAL APPEARANCE." Under Utah practice the filing of a general demurrer constitutes a general appearance.   (Page 577.)

2. JUSTICES OF THE PEACE—PLEADINGS. Pleadings in justice court, except the complaint, may be oral.   (Page 577.)

3. JUSTICES OF THE PEACE—RECITAL IN JUDGMENT—CONCLUSIVENESS. In an action to vacate a justice judgment entered on the then defendant's default, the justice judgment's recital that "From the evidence I find the defendant is indebted," etc., is not conclusive under the statute that the justice heard evidence and rendered judgment in accordance therewith, as required by Comp. Laws 1907, Section 3707, but only controvertible prima facie evidence.   (Page 577.)

4. JUSTICES OF THE PEACE—COLLUSIVENESS OF JUDGMENT—SUFFICIENCY OF EVIDENCE. In an action to vacate a justice judgment, entered on the then defendant's default, evidence *held* sufficient to show collusion between the justice and the then plaintiff's attorney in obtaining the judgment.   (Page 578.)

5. JUSTICES OF THE PEACE—APPEARANCE—DEMURRER. Where a justice did not receive his authorized filing fee of ten cents

with a demurrer sent him by defendant's attorneys in an action before him, but received and retained such demurrer without notifying the attorneys, such demurrer was filed in his office for the purpose of an appearance by defendant. (Page 579.)

6. JUSTICES OF THE PEACE—DEFAULT JUDGMENT—PROPRIETY. Where defendant, in an action before a justice, appeared by filing his demurrer, his counsel had the right to assume that the justice would perform his statutory duty to notify of the time of trial, and a default judgment, entered by the justice without such notice, was improper. (Page 579.)

7. JUSTICES OF THE PEACE—PRESUMPTIONS FAVORING JUDGMENT. No conclusive presumptions prevail in favor of the judgment of a justice of the peace. (Page 580.)

8. JUSTICES OF THE PEACE—VACATING JUDGMENT—EVIDENCE. In an action to vacate a justice judgment, it was proper for the plaintiff to show all the facts respecting the conduct of the justice, as well as of the attorney for the then plaintiff in the action before him, so far as such conduct related to the pro-curing of the judgment. (Page 580.)

9. JUSTICES OF THE PEACE—JUDGMENT—VALIDITY. The fact that plaintiff, in an action before a justice, had no cause of action when the action was commenced did not render the judgment for him void on its face, but it was a matter proper to be shown, in an action to set aside the judgment, as reflecting on the conduct of the justice. (Page 580.)

10. JUSTICES OF THE PEACE—VACATING JUDGMENT. Where a justice of the peace improperly entered a default judgment, and the plaintiff and his counsel, in the action before the justice, opposed the party against whom the judgment was entered in his attempt to avoid it, invoking all means in their power to enforce the judgment, plaintiff and his attorney must be held, in the other party's action to set aside the judgment, partakers of the wrong acts of the justice. (Page 581.)

11. JUSTICES OF THE PEACE—VACATING JUDGMENT. Plaintiff, in an action before a justice, whose attorney participated in the wrong of the justice in improperly entering a judgment against defendant in the action by default, could not resist defendant's action to vacate the judgment. (Page 581.)

12. JUSTICES OF THE PEACE—VACATING JUDGMENT—EQUITABLE RE-LIEF. Where plaintiff, in an action before a justice, had no cause of action, and the justice acted corruptly in entering a default judgment for him, such judgment will be set aside at the suit of the defendant in the action, since a court of equity will restrain proceedings upon a judgment at law where its enforcement is against conscience if the applicant comes into

Appeal from Third District.

court with clean hands, has exhausted his legal remedies, is free from laches, and has a meritorious defense.    (Page 581.)

13.  JUSTICES OF THE PEACE—VACATING JUDGMENT—LACHES. · Where a justice of the peace without taking evidence corruptly entered a default judgment against defendant, the judgment being kept from the knowledge of defendant for several years, when, believing that he had lost his right of appeal, he unsuccessfully endeavored to review it by certiorari, and thereafter was unsuccessful in appealing, the district court being restrained from hearing the appeal, as it was not taken in time, he was not barred by laches from claiming equitable relief against such judgment, under the broad rules of equity governing the reopening of judgments secured by fraud and collusion.    (Page 583.)

STRAUP, C. J., dissenting.                    •

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Neal McMillan against William R. Forsythe and others.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*E. A. Walton* for appellants.

*Ray Van Cott* and *Geo. M. Sullivan* for respondent.

FRICK, J.   ·

The plaintiff, respondent in this court, commenced this action against the defendants, appellants here, to vacate a judgment and to enjoin its enforcement.   The judgment in question was obtained against respondent by the appellant William R. Forsythe in the justice's court of Murray City, Salt Lake County.   Appellant Francis G. Luke was the attorney for Forsythe in the justice's court, and he and James A. Luke are the principal stockholders of the appellant Merchants' Protective Association, a corporation, which is a collecting agency through which the judgment in the justice's court was ob-

tained. The subject of this action in different forms has already been before us twice. *McMillan* v. *Durand,* 38 Utah 274, 112 Pac. 807, and *Forsythe* v. *District Court,* 41 Utah 16, 123 Pac. 621. Durand is the justice of the peace who rendered the judgment in question. In the first case respondent sought to obtain relief against the judgment by *certiorari* proceedings, but by reason of the incompleteness of the justice's record the writ was denied by the district court and on appeal to this court we affirmed the judgment. Respondent then undertook to appeal from the justice's judgment to the district court of Salt Lake County, and the appellant Forsythe applied to this court for a writ of prohibition to prevent said court from taking jurisdiction and to try said appeal upon the ground that the same was not taken within the time required by our statute. The writ was issued, and upon a hearing the district court was restrained from trying said appeal. See *Forsythe* v. *District Court, supra.* Respondent then commenced this proceeding in equity for the purpose before stated. A hearing in the district court resulted in findings in favor of respondent, and said court entered judgment vacating the justice's judgment and enjoining its enforcement upon the ground of collusion and fraud practiced in procuring it.

All the defendants appeal from the judgment. They assail the sufficiency of the evidence to sustain the findings, and insist that the judgment is "against law." What they really complain of is perhaps best stated in their own language which is found on page 4 of their brief as follows:

"Appellants have assigned very many errors, but we shall not discuss them separately. They principally relate to our contention that the judgment is against law, and that any finding of fraud is without support in the evidence."

It is not necessary to refer to the pleadings, except to state that the complaint contained the entire history of the case and alleged collusion and fraud and contained a plea of payment, as well as one of the statute of limitations, as defenses to the cause of action alleged in the justice's court. The collusion and fraud were denied in the answer, and the certiorari proceedings had, as shown on the appeal to this court and the

writ of prohibition, were set forth as defenses to this action. The facts upon which the findings and judgment in this case are based, briefly stated, are as follows: On the 9th day of February, 1907, appellant Forsythe, by his attorney Francis G. Luke, filed his complaint against the respondent McMillan in the justice's court of Murray City, in which the alleged cause of action is stated, in the following words:

"That on or about the 15th day of January, 1904, at Murray City, Salt Lake County, state of Utah, the defendant became indebted to the plaintiff in the sum of $183 on account of labor performed by the plaintiff to the defendant, on or about the day aforesaid, at defendant's special request. That the defendant has not paid the same, nor any part thereof."

Judgment was asked for the amount stated. The complaint was signed by Francis G. Luke as attorney, but was not verified as required by Comp. Laws 1907, Section 3685. Summons was duly issued, which was served on respondent on the 25th day of February, 1907, and two days thereafter respondent, by his attorneys, who lived and had their offices in Salt Lake City, deposited in the United State post office, postage prepaid, a demurrer in due form addressed to the justice before whom the complaint was filed. Said justice received said demurrer and indorsed thereon the following: "Rec'd. 2—28—'07." He did not file the same in the action for the reason, as he afterwards said, that he held the same for a ten cent filing fee. The justice, without notice of any kind to either the respondent or his attorneys, and notwithstanding he had received and retained the demurrer as aforesaid, on the 11th day of March, 1907, entered a judgment by default against respondent for the full amount claimed in the complaint. On the hearing of the case at bar it was established without question that in entering the judgment in question the justice heard no evidence whatever; that the claim for which suit was brought was for services which Forsythe claimed he had rendered for respondent during the years 1898, 1899, and 1900 in Sevier County, Utah, and for which services he had been fully paid. The checks issued by respondent and delivered to Forsythe in payment for said services were produced in evidence, the last one of which is dated April 30, 1900. Neither

Forsythe, nor any one else, disputed the evidence of payment, nor made any claim whatever at the trial that respondent was indebted to him in any amount at the time of trial, or that he was at any time except as stated above. It is due counsel for appellants to state here that his view of the matter was that he was not required to contradict or meet those matters. For the purpose of this decision the facts herein stated must be assumed to be true. It was also made to appear that the Merchants' Protective Association claimed one-half of the judgment as a collection fee, and that Francis G. Luke and James A. Luke owned a majority of the capital stock of said association. It was also shown without contradiction that not a single fact stated in the complaint filed in the justice's court was true; that it was not true that respondent, on the 15th day of January, 1904, or at any time, "became indebted to the plaintiff" aforesaid "at Murray City, Salt Lake County;" that neither the respondent nor his attorneys knew that a judgment by default, or otherwise, had been entered in the case, but that they believed the case was pending upon the demurrer and did not learn of the judgment, or that the demurrer was "held for fees" until some time in July, 1910, when an execution was issued on the judgment, and from which time respondent and his attorneys have constantly been trying to prevent the enforcement of the judgment, first by the writ of *certiorari,* and then by appeal as hereinbefore stated. It was further shown that at the time the attorney for Forsythe prepared the complaint filed in the justice's court he had evidence before him of the fact that, even though Forsythe at one time had a meritorious claim, yet that it had been barred by our statute for a number of years before the complaint was filed, and, further, that Forsythe in fact at no time had any claim whatever against respondent which arose at Murray or in the year 1904 as alleged. It did appear, however, that during all the years that the alleged services were rendered up to the time that the action was brought Forsythe never made any claim whatever that respondent was indebted to him either for services or otherwise.

The justice was called as a witness by respondent, and he admitted that he received the demurrer as before stated, and

that it was indorsed "held for fees;" that he was well acquainted with respondent, who lived at Murray City about all his life, and at the time lived within a block or so from the justice's office; that if he had notified respondent respecting the fee, in all probability he would have received it forthwith; that the complaint filed in the case was a printed form used by said collecting agency to commence actions in said justice's court. It was also shown that both Francis G. Luke and James A. Luke were, and for many years had been, well acquainted with respondent's attorneys, and were so acquainted at the time the action was commenced in the justice's court and when the demurrer was filed, and that they all had their offices in Salt Lake City. It was also testified to by respondent's attorney, and not disputed, that at the time the demurrer was filed he was not aware that justices did charge, or had a right to demand, a fee of ten cents for filing a demurrer, and that he in his practice never had paid, and never had been required to advance, such a fee. The attorney conceded, however, that the justice may have had a legal right to demand a fee of ten cents.

The only question for us to solve is whether, under the facts and circumstances, the district court erred in granting the relief before stated.

By our statute, Comp. Laws 1907, Section 3771, justices' courts are declared to be courts of limited jurisdiction. The filing of a general demurrer, under our practice, **1** constitutes a general appearance. In section 3684 it is provided that when a party has appeared it is the duty of the justice to fix a time for trial and to notify the parties who have appeared in the action of the time so fixed.

Pleadings, except the complaint, may be oral. Section 3707 in part provides that if the defendant fails to appear within an hour after the time specified in the notice of trial, as provided in section 3684, "the justice must, upon appli- **2, 3** cation of the plaintiff, enter the default of the defendant and hear the evidence offered by the plaintiff, and render judgment in his favor for such sum, not exceeding the amount specified in the complaint, as appears by such evidence to be just." By section 3757 it is provided that the justice must

keep a docket in which, among other things, he must enter "the time when the parties, or either of them, appear, or their nonappearance, if default be made; * * * the names of all witnesses sworn, and at whose request; * * * the judgment of the court, * * * and the time when rendered." By section 3758 the entries aforesaid are declared to be "*prima facie* evidence of the facts so stated." The docket entries in the case of *Forsythe* v. *McMillan*, did not disclose that any witness was sworn, nor that any evidence was heard, notwithstanding that by section 3707, *supra*, the justice is required to hear evidence and to render judgment in accordance therewith. True, the justice incorporated into the judgment this recital:

"From the evidence I find the defendant is indebted to plaintiff in the sum of $200.30, including interest." ·

This, however, it is apparent, was a mere form of expression. But if it be assumed that this recital is sufficient to show that evidence was heard, yet, under our statute, in a proceeding like the one at bar, such a recital is not conclusive, but is only *prima facie* evidence of the fact recited, and may thus be controverted by any proper evidence. Such has been held to be the law under a statute of California, from which ours is copied, in *Rauer* v. *Justice's Court*, 115 Cal. 84, 46 Pac. 870. The evidence is without contradiction that no evidence whatever was heard by the justice. It is also not questioned that the complaint was not verified. The judgment was therefore entered without a word of testimony by any one, without any evidence whatever, and without a claim of any kind under oath. For the reasons just stated we need not speculate upon the effect that such a recital would have in a judgment entered in a court of record, or of one of general jurisdiction in a proceeding of this character. The facts, therefore, are that an appearance was made by the defendant in the action by the filing of a demurrer, that he, however, did not appear further in the case because of the circumstances hereinbefore stated, and that judgment was entered without any evidence whatever upon a complaint not verified. If the action had been commenced in one of our courts of record or of general jurisdiction, a default judgment could not have

been legally entered until the complaint had been verified. Let us assume, however, that the judgment was for those reasons not void, but merely irregular, yet, from all the evidence and circumstances and the conduct of the justice, collusion between him and Forsythe's attorney is clearly inferable in obtaining the judgment in the manner it was done.

Let it also be assumed that the justice was authorized to demand a filing fee of ten cents for filing the demurrer, yet, under the circumstances, we think when he received and retained the demurrer in the manner he did, it must be deemed as having been filed in his office for the purpose of an appearance by respondent in the action. Suppose the respondent had thereafter sought to avoid the effect of the appearance, would not the fact that he had mailed the demurrer, and that it was received by the justice as stated, have prevented him from successfully doing so? If the justice did not want the demurrer to have that effect, we think it was his duty to notify either the respondent or his attorneys, and if the fee was then refused, the demurrer could have been stricken. Again, if the justice did not desire to receive the demurrer, he could have returned it forthwith to the attorneys. His conduct cannot be justified under any view that can be taken, and, in our judgment, it amounted to a willful concealment that a judgment by default would be entered against respondent.

As we have pointed out, under the statute, after the respondent had appeared by filing the demurrer he or his counsel were entitled to a notice from the justice in which the time of trial was fixed. After filing the demurrer, therefore, counsel had a right to assume that the justice would perform his duty in that regard, and before proceeding further would notify them. The receipt of the demurrer by the justice clearly constituted a filing thereof within the decision of the Supreme Court of California in *Tregambo* v. *Comanche M. & M. Co.*, 57 Cal. 501-506. But let us again assume that the justice's conduct in that regard merely constituted a gross irregularity, and that inasmuch as he had acquired jurisdiction, the judgment is not void for that reason. But here again it amounts to proof of improper conduct on

the part of the justice from which the trial court was justified to infer both collusion and concealment.

In view that no conclusive presumptions prevail in favor of the judgment in question, it certainly was proper for respondent to show all the facts respecting the conduct **7, 8** of the justice, as well as of the attorney for Forsythe, so far as that conduct related to the procuring of the judgment in question.

Moreover, he had a right to show that no cause of action whatever existed in favor of Forsythe at the time the action was commenced. While that fact, standing alone, would not make the judgment void on its face, yet it was proper to show the fact as reflecting upon and characterizing the conduct of the justice and that of the attorney for For- **9** sythe. Let it be remembered, also, that under the circumstances the justice's conduct cannot be attributed to innocent ignorance. When his memory was searched by counsel with regard to whether he heard any evidence before entering the judgment, he evaded the subject and attempted to shield himself behind the statement that he did not charge his memory with "that case any more than hundreds of other cases." By "that case" he referred to the case in question. He, however, admitted that he never had seen Forsythe, nor had any recollection of hearing any evidence. If, therefore, he conducted hundreds of other cases, he must have been conversant with the law and practice respecting his duty to hear evidence before entering a judgment, and to act impartially in all matters brought to his court. It seems to us he was well informed respecting his right to demand a ten cent fee from respondent, and he, in the interest of Forsythe or his attorney, relied on his right in that regard as the only excuse for entering a default judgment against respondent. Upon the other hand, he was so kind and considerate as not to expose Forsythe, or his attorney, to the charge of perjury or of subornation thereof that he was willing to and did enter judgment without any evidence or without requiring the complaint to be verified as required by the statute. Such conduct by any one who essays to wear the garb of a judge, and who pretends to act in the name of justice, is utterly indefensible either in law or morals.

But it is contended that, although the justice was guilty of the acts charged, yet unless Forsythe had knowledge thereof or had participated therein, he is not to be held responsible therefor. Such, however, is not the law. Both Forsythe and his counsel Francis G. Luke, who has a personal interest in the judgment, from the very first have sought to retain every advantage which a judgment at law gives to him in whose favor it is rendered. They always have opposed, and continue to oppose, respondent in his attempt to avoid what he deems a mere extortion of money, and they have invoked all means within their power to maintain the judgment and to enforce it. Such being their conduct and attitude, they must, so far as this proceeding is concerned, be held as partakers of the wrongful acts of the justice. In a note to *Little Rock, etc., Ry. Co.* v. *Wells,* 54 Am. St. Rep. 238, the rule applicable to cases like the one at bar is stated thus:

"If there is fraud upon the part of the court or judge, there seems to be no reason why it does not constitute as complete a ground for relief as if the prevailing party had been guilty thereof. Such fraud can but rarely occur without a conspiracy between the judge and the party benefited, and, even if there be not such conspiracy in the beginning, the party benefited ought to be regarded as joining therein when, being informed thereof, he seeks to retain its advantage" (citing cases).

But we need not go to that extent in this case, since it is clearly inferable from the whole evidence that Francis G. Luke, the attorney for Forsythe, had knowledge of the justice's conduct, and either connived at his acts or actually participated therein. Forsythe may thus not profit by the wrongs of his agent and attorney. *Webster* v. *Diamond,* 36 Ark. 543, where it is held that under such circumstances relief in equity from a judgment is proper.

Let us now for a few moments examine into the law respecting the power of courts of equity to interfere with judgments and under what circumstances such interference is permissible. The Supreme Court of Indiana, in *Walker* v. *Heller,* 90 Ind. 200, states the rule thus:

"It is well settled that a court of equity will restrain proceedings, upon a judgment at law, where its enforcement is against conscience, and the same has been recovered by an unfair advantage.

Wherever, by accident, mistake, fraud, or otherwise, an unfair advantage has been obtained in proceedings at law, and it is against conscience to make use of such advantage, a court of equity will restrain the party from making use of the same; and, after judgment, any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not avail himself in defense of the suit, will authorize the court to interfere by injunction and restrain the party from enforcing the judgment. These are familiar principles, and are not questioned by the parties to this controversy."

In *Lockwood* v. *Mitchell*, 19 Ohio 451, 53 Am. Dec. 438, the court, in referring to the law upon the subject, says:

"A decree or judgment receives its force from the fact that it is the decision of a competent tribunal, before which both the parties have had an opportunity of appearing and prosecuting their claims and having them fairly adjudicated. When this is prevented by the fraud or circumvention of one of the parties, without the fault or negligence of the other, the decree or judgment of the court ceases to have its binding effect, and it is competent for the party injured to resort to a court of chancery to obtain relief."

In *Bibend* v. *Kreutz*, 20 Cal., at page 115, the Supreme Court of California quotes and adopts the language from Story's Equity, Section 885, as follows:

" 'In general,' says Story, 'it may be stated that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained."

The question is thoroughly discussed in High on Injunctions, Sections 190 to 208, inclusive, to which we refer the reader. In Section 200, in attempting to formulate a general rule, the author says:

"Illustrations of the rule as above stated are numerous, but the same general principle of preventing one who has gained a legal advantage by fraud from availing himself of its benefits will be found to underlie them all."

Of course, to be entitled to relief, the applicant must come into a court of equity with clean hands; he must have exhausted his legal remedies, be free from laches, and ordinarily

must prove that he has a meritorious defense to the action. Moreover, the fraud must not relate to the original cause of action, but must affect the judgment from which relief is sought.   Under the evidence all must concede that Forsythe had no cause of action against respondent when the action in the justice's court was commenced.   It is equally clear that the justice merely prostituted his powers as a court in the interest of Forsythe and his attorney Luke, and disregarded every rule of law and justice, as well as practice, in order to enter judgment in favor of Forsythe, and against respondent, who, it is shown, was a man of large property interests, and well able to pay the judgment.   The judgment, entered as it was in the very teeth of the statute which authorizes the justice to enter a judgment only after hearing the evidence, is a fraud and a sham, and is enforceable only because it has the form of a valid judgment.

In *Wagner* v. *Shank,* 59 Md. 322, the Court of Appeals of Maryland, in referring to a judgment which was entered by default by a justice under a statute which, like ours, required the justice to hear evidence, it is said:

"Judgments entered up as these were are simply shams, mere attempts to create debts by the forms of law where none were ever proved to exist, or where none in fact ever existed."

It is contended that respondent and his counsel were guilty of laches, and for that reason are not entitled to prevail in equity.   This is really the only serious question in the case.   The writer has examined a great number of cases, **13** and from a consideration of them all has become thoroughly convinced that upon that question no hard and fast rule should be laid down, but every case should be determined in accordance with its own peculiar facts and circumstances.   While judgments cannot be assailed and courts of equity may not, except for good and sufficient cause, reopen matters once litigated, yet in actions where, as here, fraud and collusion may be inferred from the acts of the justice and counsel in obtaining the judgment which is assailed, then the inflexible and somewhat narrow and strict rules of law no longer have any application, but the broader, more flexible and utilitarian rules of equity must determine the result.   It is in

the light of those rules, therefore, that we must approach the question. It is contended that respondent had a remedy by appeal, and hence cannot invoke the· powers of a court of equity. The facts in that regard are these: In the year 1907 the Legislature amended the statute respecting the taking of appeals from justices' courts to the district courts. Laws 1907, p. 256. The amendment went into effect on the 25th day of March, 1907, or 14 days after the judgment which it is sought to vacate was entered. Before the amendment was passed an appeal had to be taken within 30 days after the rendition of the judgment. The Legislature, in order to avoid concealment, so amended the statute that, in order to set, the running of the time for taking an appeal in motion, the prevailing party was required to serve his adversary with notice of the entry of judgment, stating the time when it was entered. This statute was apparently overlooked by respond-ent's counsel, and thus, when they learned, in July, 1910, that the judgment had been rendered on the 11th day of March, 1907, they assumed that the time within which to prosecute an appeal had passed, and hence they commenced the proceedings of *certiorari* under Comp. Laws 1907, Section 3630, in which, so far as judgments in justices' courts are concerned, it is provided:

"Said writ shall issue at any time, after judgment, and the district court shall, pursuant to said writ, inspect and review the proceedings had in the justice's court, and shall determine whether said justice's court had jurisdiction of the cause of action or the person of the defendant, *and had regularly pursued its authority as prescribed by law.*" (Italics ours.) .

After the judgment sought to be vacated herein had been entered we held that a party could waive the notice of entry of judgment provided for in the amendment of March 25, 1907, *supra,* and that a direct attack upon the judgment constituted such a waiver. *State* v. *District Court,* 38 Utah 138, 110 Pac. 981, Ann. Cas. 1913B, 437. When, therefore, an appeal was taken to the district court after the *certiorari* proceedings had failed, Forsythe instituted prohibition proceedings to restrain the district court from hearing said appeal. In that proceeding he was successful. *Forsythe* v. *District*

*Court,* 41 Utah 16, 123 Pac. 621. We there held that, inasmuch as respondent had directly assailed the judgment by *certiorari* proceedings, upon the authority of *State* v. *District Court, supra,* he had waived the notice of entry of judgment, and that the appeal was therefore not taken in time. For those reasons it is now contended by appellants that respondent must again fail upon the ground of laches in not pursuing the proper remedy at the proper time. While it is true that under the law as we have construed it in *State* v. *District Court, supra,* respondent lost his right of appeal, yet we do not think that under the peculiar facts and circumstances of this case the defense of laches should prevail. As was said by the Court of Appeals of Maryland, in *Wagner* v. *Shank, supra,* at page 318 of 59 Md., in passing upon this question:

"But this rule in terms recognizes the doctrine, which is equally well settled, that where a party is not in fault by failing to use reasonable diligence, and is prevented from defending the action at law, by fraud or accident, or the acts of the opposite party, equity will lend its aid and give relief."

The only laches that can be attributed to counsel is that they did not avail themselves of the amendment of 1907 respecting the right of appeal. Under the law, as it stood when the judgment was entered, the right of appeal had lapsed long before counsel and appellant learned of the judgment. Why should respondent, with regard to that law, be charged with laches any more than Forsythe or his attorney? After the amendment of 1907 it became their duty to serve the notice of entry of judgment, but they failed to do so, and made no attempt to do so until August 10th, after respondent had instituted the *certiorari* proceedings, and had thus waived his right to the notice. By the justice's conduct respecting the demurrer respondent's counsel were induced to believe that the case was still pending on demurrer. From all the facts and circumstances it is clearly inferable that either the justice or Forsythe's counsel, or both, intended to conceal the fact that the judgment was entered until the time for an appeal had elapsed, and that they fully believed that they had done so when they issued the execution upon the judg-

ment. It may be conceded that under the strict rules of law, when there is a legal remedy which takes precedence, that remedy must be pursued, and a failure to do so may deprive a party of all remedy. Such, in our judgment, should, however, not, under all circumstances, be held to be the case under the more flexible rules of equity. That is also the conclusion arrived at by the Supreme Court of California, in a similar case when it held that, although the remedy was not pursued that might have been, yet that that alone will not always deprive a court of equity of jurisdiction or prevent it from granting proper relief. *Merriman* v. *Walton,* 105 Cal. 403, 38 Pac. 1108, 30 L. R. A. 786, 45 Am. St. Rep. 50. To the same effect is *Thompson* v. *Laughlin,* 91 Cal. 313, 27 Pac. 752. It may also be said, as was said in the Maryland cases quoted from, that the case at bar is practically an exception and may be differentiated from nearly all cases of this class. The judgment entered by the justice is a mere sham and a fraud; it is based upon not even a semblance of right. All this was known to both the justice and Forsythe's attorney at the time and before the judgment was entered. If equity shall refuse relief from such a judgment, then collusion, fraud, and concealment are quite as effective in protecting judgments as truth, fair dealing, and honesty could possibly be. If such conduct is permitted to succeed, then no one is safe from extortionate demands, and no one need take the risk of committing perjury nor of suborning any one to commit the crime in order to obtain a judgment. All he has to do is to find some court who will be accommodating enough to disregard every statutory provision and enter judgment without any evidence whatever, and if the victim shall not promptly pursue the most approved remedy, the beneficiary need only point to the fact that he has not done so, and hence must go without relief and the extortioner collects his demands. Such a result is contrary to good conscience and to every sense of justice and fairness, and cannot prevail in any court of conscience except where the court shields itself behind the strict rules of law and practice in order to deny protection to the citizen and to shield him from wrong and oppression by those who seem to make it their

business to concoct schemes whereby they can make use of some court and of some legal rules to further their unjust purposes. While courts of equity should not lightly and without good and sufficient cause interfere with judgments, nor do so when it is made to appear that the applicant either comes into court with unclean hands or has slept upon his rights, yet, when, as in this case, it is made to appear that from the very day the respondent and his counsel learned of the wrongful judgment, they, in season and out of season, always sought relief therefrom, they should not be turned out of court simply because they did not pursue a new remedy which became effective only after the judgment was entered, although they could have invoked it in this case. We hold, therefore, that under the peculiar circumstances of this case we are not inclined to interfere with the findings and conclusions of the district court, and we affirm the judgment of that court that relief in this case should not be refused upon the ground of laches.

We desire to add in conclusion that we have not considered the question of whether this proceeding is a direct or collateral attack upon the judgment in question for the reason that the presumptions that usually apply to judgments of courts of record or of general jurisdiction under our statute have no application here. Neither have we considered the question that respondent made no application in the justice's court to set aside the judgment, as under certain circumstances he might have done, since, when he or his counsel learned of the judgment, the justice, under our statute, had lost jurisdiction of the case and had no power to entertain such a motion.

For the reasons stated, the judgment of the district court is affirmed, with costs to respondent.

McCARTY, J., concurs.

STRAUP, C. J. (dissenting).

On the 9th of February, 1907, Forsythe, in the justice's court, commenced an action for services rendered, against McMillan by the filing of an unverified complaint. Summons showing personal service on McMillan on the 25th of Febru-

ary was returned, and was filed by the justice on the 9th of March. All these were properly entered in the justice's docket and are shown by the files. The justice's record and docket show no appearance by McMillan, but show that at the expiration of his time to appear and plead, entries on the 11th of March were made of his default and judgment against him in accordance with the demands of the complaint. The justice's record further recites that:

"From the evidence I find the defendant is indebted to plaintiff in the sum of $200.30, including interest. It is therefore ordered and adjudged by the court that plaintiff have and recover from the defendant the sum of $200.30, and costs taxed at $3.40, C. F. Durand, justice of the peace."

It was, however, made to appear, *aliunde* the justice's record, that before default day the attorneys for McMillan mailed to the justice a demurrer to the complaint which was received by him. The filing fees required by the statute having not been tendered nor paid, the justice did not file the demurrer, but placed it in an envelope and indorsed thereon "Held for fees," and kept it about his office, but not with the files and records of the case. The justice, treating the tender of the demurrer without payment of fees as no appearance, later entered the default and judgment. There the matter stood until in July, 1910, when an execution was issued on the judgment. It was claimed by McMillan that until the service of the execution he had no knowledge that a judgment had been taken against him, he assuming that his demurrer had been filed, and that the case during all that time was pending on demurrer. Because no notice of the entry of the judgment had been given him as required by statute to set in motion his time to appeal, McMillan had the right to prosecute an appeal from the judgment to the district court within 30 days from the time he first obtained notice or knowledge of the entry of the judgment, which was in July, 1910. He then took no appeal. Instead he applied to the district court for, and was given, a review by *certiorari* of the justice's record and proceedings by which review he sought to have the justice's judgment annulled and vacated on the alleged ground that the mailing of the demurrer and

its receipt by the justice constituted in law a filing of the demurrer and an appearance, notwithstanding the filing fees were not paid nor tendered, and that hence the justice, without authority, and in excess of jurisdiction, entered the default and judgment. The district court on such review refused to annul, but affirmed, the judgment. From that judgment of the district court McMillan prosecuted an appeal to this court. The judgment was affirmed by us. *McMillan* v. *Durand,* 38 Utah, 274, 112 Pac. 807. While the case on *certiorari* was pending on appeal, Forsythe served notice on McMillan of the entry of the judgment in the justice's court. Within thirty days from that time McMillan prosecuted an appeal from the justice's judgment to the district court. There a motion was made to dismiss the appeal on the ground that it was not taken in time, it being claimed that McMillan, by his direct attack on the justice's judgment by *certiorari,* had, for nearly two years before taking his appeal, actual knowledge and notice of the entry of the judgment. The district court refused to dismiss the appeal, and was about to proceed with the case when we, on prohibition, arrested his action. That opinion was rendered by us in April, 1912, and is reported (*Forsythe* v. *District Court*) in 41 Utah, 16, 123 Pac. 621. Then in June, 1912, McMillan brought this action in equity to annul the justice's judgment upon allegations that he, until service of the execution, had no knowledge of the entry of the judgment in the justice's court, and until then assumed and believed that the case was pending on demurrer and upon allegations of fraud that F. G. Luke, as the attorney for Forsythe and J. A. Luke, principal stockholders of the Merchants' Protective Association, a collecting agency, with knowledge that the demurrer had been mailed and received by the justice, and that McMillan had good defenses to the complaint, persuaded and induced the justice not to file the demurrer, to enter a default, and, without evidence, to enter a judgment in accordance with the demands of the complaint. It is also alleged that McMillan, by payment and bar of the statute of limitations, had good defenses to the complaint, but by reason of the alleged fraud was prevented from interposing them. These allegations were

all denied by the defendants. They further pleaded the *certiorari* and prohibition proceedings in bar and as estoppels to this action. The case was tried to the court, who found the issues in favor of the plaintiff. McMillan, annulled the justice's judgment and enjoined its enforcement. From that judgment Forsythe has prosecuted this appeal. He contends that the findings and conclusions as to the alleged fraud are not sustained by the evidence, and that equity may not be invoked to annul the justice's judgment, except on allegations and proof of fraud in the procurement of the judgment.

I think it well settled that the fraud for which equity will relieve against the enforcement of judgments is that practiced in the procurement of the judgment, and not that which taints or vitiates the cause of action upon which the judgment was founded (1 High on Injunction, Section 190A), and must be extrinsic and collateral to the matters involved in the issues or trial at law (23 Cyc. 1024), and must be actual and positive and not merely constructive (*Ross* v. *Wood*, 70 N. Y. 8), and that the party seeking the relief must show that his situation was not due to his own fault or neglect in failing to plead to or defend the original action, or otherwise to watch over, protect, and assert his rights in the proceedings, or to apply in due season for such remedies as were open to him by appeal or other proceedings to vacate the judgment (23 Cyc. 979). These propositions are not seriously controverted. The court found that the Lukes, knowing that the demurrer had been mailed to and received by the justice, and that McMillan had a good defense to the complaint, induced the justice not to file the demurrer. I do not see any evidence to support the finding. It is not claimed that the demurrer was served on any one—it was not required to be served—nor is it claimed that the Lukes' attention, in any manner, was called to the demurrer, or that any one said anything or communictated anything to them concerning it. It is not even shown that J. A. Luke had anything whatever to do with the case. F. G. Luke, as appears by the complaint filed before the justice, acted as the attorney for Forsythe. But it is not shown that he had any knowledge that a demurrer had been

mailed to the justice, or that it for any reason was withheld from filing. It is not claimed that McMillan or his attorneys, or the justice, or any one, gave Forsythe, or Luke, his attorney, any such information. It is not even shown at whose request the default was entered. It is presumed at Luke's, from the fact that he acted as attorney for Forsythe. I think that a natural presumption, but it does not follow from that that he had any knowledge that a demurrer had been sent to the justice, or that it was withheld. The justice's record did not disclose any such thing. So an inspection of the record and files gave no such information. The only evidence given to substantiate these allegations of fraud is that the attorneys for McMillan mailed a demurrer to the justice, who withheld it from filing because his fees were not tendered nor paid, that he did not notify counsel that the demurrer was withheld from filing, and that F. G. Luke was the attorney for Forsythe, and as such filed, or caused to be filed, the complaint for him. From that it is argued that Forsythe or Luke, his attorney, had knowledge that the demurrer had been mailed to the justice, and that Luke persuaded and induced him not to file it, and not to notify McMillan's counsel that the demurrer was withheld. I do not think such deductions of fraud justifiable where, as here, the proof of fraud must be clear and positive.

I think the justice's fees were waivable, and that before he withheld the demurrer from filing he ought to have demanded his fees, which he did not do, and that that was ground on an application therefor to have set aside the default and judgment. But when equity is invoked to annul the judgment on the ground of fraud, that is another matter. Because the justice erroneously or improperly withheld the demurrer from filing because his fees were not paid does not, in itself, justify a charge of fraud on the part of the justice or of the plaintiff, or his attorney. Were that true, then mere errors made by a justice would, in equity, be ground to annul judgments rendered by him. The complaint in this action proceeds on the theory of actual fraud and connivance between the justice and Forsythe's attorney in withholding and not filing the demurrer. Whatever speculation may be

indulged as to that, I see no evidence in the record upon which to base any such a finding. Because the justice erroneously or improperly withheld the demurrer from filing did not divest him of jurisdiction to enter the default and judgment. That in effect is what is held by us in the case on *certiorari*. 38 Utah, 274, 112 Pac. 807.

The point also is made that the complaint before the justice was not verified. Because of that I do not think the justice was without jurisdiction to, proceed. The complaint admittedly states facts sufficient to constitute a cause of action. Another point is made that the justice entered the judgment without evidence. His record, in effect, recites that the judgment was entered upon evidence. It recites that:

"From the evidence I find that the defendant is indebted to the plaintiff in the sum of $200.30."

The dictrict court, in this action, does not find that the justice's judgment was rendered or entered without evidence. What the court found is:

"That there was not sufficient evidence offered or received by the said justice at the time of the entry of said judgment, or at any time prior thereto, in support of said complaint."

It is not disclosed in this case what evidence was offered or received by the justice. Nor does the proof show that no evidence was offered or received, or that the justice's recital in such respect is false. The only proof as to that is the testimony of the justice, who testified that:

"There were many judgments entered upon the same basis— nonpayment of fees—and this case made no more impression upon my mind than any other case. I do not remember whether there was any evidence taken in this case or not" —and the testimony of Luke who testified:

"I do not remember anything about it now."

These witnesses were called by the plaintiff, and by them it was expected to prove that the judgment was entered without evidence. I do not think that the testimony given by them is proof of such fact; at least not sufficient to overcome the recitals of the justice's record that the judgment was entered upon evidence. Merely to call witnesses, though they

may be hostile, to prove a fact, and who but testify that they did not then remember anything about it, is far from proving the fact itself. But, further, equity may not be invoked to annul a judgment on the ground that it was rendered or entered on insufficient or no evidence. *Hunter* v. *Hoole,* 17 Cal. 418; *Powell* v. *Stewart,* 17 Ala. 719; *Wright* v. *Eaton,* 7 Wis. 597; *Martin* v. *Pifer,* 96 Ind. 245; *Burke* v. *Wheat,* 22 Kan. 722. This is so, as the remedy is by appeal, writ of error, or *certiorari.*

It is also contended that there is no merit to the complaint filed before the justice for the reason that the evidence in this case, without dispute, shows that the claim sued on before the justice had been paid and was barred. Of course, in this action to annul the judgment entered by the justice, the plaintiff here, among other things, was required to show that he had a meritorious defense to the complaint filed before the justice. But the issue as to whether the plaintiff in the justice court ought to have prevailed on his complaint, or the defendant on his defense of payment or bar of the statute, was not before the court for adjudication. Since such defenses were material only to the inquiry of whether the plaintiff had any defense to the complaint in the justice's court, any offer of the defendants to prove that the claim had not been paid, and that the statute had not run, or was tolled, would have been impertinent, just as it would have been impertinent to have offered proof in support of the allegations of the complaint filed before the justice. What the plaintiff by this action contends is that he, in the justice's court, was prevented through fraud from interposing and making such defenses, and for that reason seeks to have the judgment annulled and set aside in order that he may properly make and show them. But notwithstanding that, the district court in this action stated the conclusion "that the alleged claim upon which said action (in the justice's court) was founded has been duly paid and satisfied," and was barred. Thus, the defenses which the plaintiff showed he could interpose and make to the complaint in the justice's court, if the judgment be annulled and set aside, the court, in this action, adjudged in plaintiff's favor as though the court had before

it and had tried such issues on merits. I, therefore, think the complaint made of that is well founded.

But aside from these considerations I think the plaintiff must be denied relief in equity on the ground that he had a complete remedy by appeal, but wholly, through his own fault and neglect and without any fault or interference whatever on the part of the defendants, or either of them, failed to avail himself of it. Let it be conceded that the plaintiff presumed that the case in the justice's court for more than three years was pending on demurrer, and that he had no knowledge that a judgment had been taken against him until the service of an execution in July, 1910. He then, within thirty days thereafter, had the right to prosecute an appeal from the justice's judgment to the district court. This he did not do until nearly two years thereafter, and after he had unsuccessfully pursued a wrong and unavailing remedy and had long lost his right to appeal. It is claimed that he did not then know that he had the right to appeal. But from the time of the mailing of his demurrer in February, 1907, to the presentation and submission of this cause, he, in all that he did, was represented by counsel. But it is said that they also did not know that then the right of an appeal existed, and for that reason unsuccessfully sought relief by *certiorari*, and when that was ended the right to appeal had long expired. 41 Utah, 16, 123 Pac. 621. It is familiar doctrine that equity will not relieve against a judgment at law where complete relief against the judgment could have been had by appeal but which, through the neglect or fault of the aggrieved party, and without the fault of his adversary was not taken. To invoke equity in such case because of the want of knowledge that the right of an appeal existed, or losing it by mistaking and pursuing an unavailing and inappropriate remedy, is to do violence to the familiar maxims, that "ignorance of the law excusses no one," and "that to be ignorant of the law is gross neglect," and to the principle that an election of remedies is final and conclusive. I, therefore, think the judgment should be reversed.