## STATE *ex rel.* COSGROVE v. PERKINS, *Judge.*

### Division Two, May 11, 1897.

1. **Tenure of Office:** GENERAL LAW. Where the statute uses the words "until his successor shall be elected and qualified" there can be no doubt that the duration and power of such holding-over elective officer will continue until his successor has been chosen and qualified; but where such words are omitted it is sometimes a matter of doubt whether or not the incumbent can hold over.

2. ———: CIRCUIT JUDGE: APPOINTED BY GOVERNOR. A circuit judge was appointed by the Governor "until his successor shall be elected and qualified." Section 3276, Revised Statutes 1889, says that if a vacancy occur in the office of judge of a court of record it shall be filled by appointment of the Governor "until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term." The successor to said appointee was elected in November, 1896, and qualified on January 2, 1897. *Held,* that the official term of such appointee expired at the general election in November, 1896, and could not be extended by reason of the fact that the commission he received from the Governor assumed to enlarge his official term until his successor qualified; *but* whether his official acts were valid as a *de facto* judge between the time of the general election and the qualifying of his successor, is not decided because not necessary to a proper determination of this case.

3. ———: ———: MOTION FOR NEW TRIAL. The respondent was elected circuit judge in November, 1896, and qualified, in the presence of his predecessor, on January 2, 1897. His predecessor had decided two cases on December 31, and adjourned court till January 4, and on December 31 motions for new trials were filed in each case, which were on January 4 overruled by respondent's predecessor, who stated at the time that he was closing up the unfinished business of December 31, and having overruled the motions resigned the bench, and respondent at once assumed the duties of the officer. *Held,* that respondent alone had control over the motions, and that his predecessor's ruling thereon was wholly unauthorized and void.

4. ———: ———: ———. Formerly the practice was for an incoming judge, when called upon to pass upon a motion for a new trial filed before his predecessor, to grant such motion. But under section 2171, Revised Statutes 1889, which is a remedial statute, such judge has the power to pass upon the motion for a new trial and to sign the bill of exceptions of a case tried before his predecessor, thus setting aside the authority of *Cocker v. Cocker,* 56 Mo. 180, and *Wolfolk v. Tate,* 25 Mo. 597.

5. **Statutory Power**: COINCIDENT POWER. The statutory power to sign a bill of exceptions carries with it as a coincident power the authority to pass upon a motion for a new trial, without the exercise of which coincident authority the power to sign a bill of exceptions would be void and useless, because, "whenever a power is given by a statute, everything necessary to the making it effectual or requisite to attain the end, is implied." *Ex parte Marmaduke*, 91 Mo. *loc. cit.*, 262, and cases cited.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*McAntire & Craycroft* and *F. M. Redburn* for relators.

(1) Judge Crow was holding his office prior to January 2, 1897, by virtue of a commission issued by the Governor of the State of Missouri, appointing him judge to fill the office until the next general election, and until his successor qualified. His term of office expired the moment his successor qualified. R. S. 1889, sec. 3276; Const. Mo., sec. 2, art. 5; *State ex rel. Robinson v. Thompson*, 38 Mo. 193; *State ex rel. Attorney-General v. Seay*, 64 Mo. 89. (2) No installation was necessary by Judge Perkins to enter upon the discharge of the duties of his office. His election and qualification by taking the required oath was all that was necessary to invest him with the office.    19 Am. and Eng. Ency. of Law, p. 445; *Ex parte Smith*, 8 S. C. 495; *Johnson v. Wilson*, 2 N.H. 202; 9 Am. Dec. 50. The acts of Judge Crow were void and *coram non judice*. *State v. Shea*, 95 Mo. 85; *State ex rel. Brown v. Walls*, 113 Mo. 45; *State ex rel. Schonhoff v. O'Bryan*, 102 Mo. 259. (3) The doctrine of *de facto* judges has been said to have no application where there is already an incumbent of the office, as it required no entry upon the discharge of the duties of the office to vest Perkins with it. 12 Am. and Eng. Ency. of Law, 24; 8 S. E. Rep. 383; 46 Fed. Rep. 714; 49 Ark. 439. It is held in our State that when it is notorious that an incumbent is holding over

without right, he is not an officer *de facto*. *Conway v. St. Louis*, 9 Mo. App. 488. (4) After the defendants in the two cases objected to his acting upon the motions, Judge Crow announced that he knew that Perkins had qualified on January 2, and that he knew that his term of office had expired, and by such an announcement, in addition to the protest of defendants to his acting, he announced his disqualification. And the rule is that where a judge announces his disqualification he thereby abdicates his office. As to that case the effect was that his disqualification extended through every order or ruling, applies in this case. *Dawson v. Dawson*, 29 Mo. App. 521; *Lacy v. Barrett*, 75 Mo. 469. (5) A mere intruder who without color of authority simply assumes to act as an officer, is not an officer *de facto* where the public knows or ought to know that he is an usurper and his acts are absolutely void for all purposes. *Van Amringe v. Taylor*, 108 N. C. 196; 12 Lawyers' Rep. 202. (6) *Mandamus* is the only remedy for relators in these cases. If they should undertake to take an appeal the motions for new trial would be undetermined by legal authority and their appeal would be dismissed. Where a judge refused to act *mandamus* is the proper remedy. *State ex rel. Meinhard et al. v. Stratton*, 110 Mo. 426.

*Cunningham & Dolan* for respondent.

(1) Relators seek to have defendant, J. D. Perkins, judge of the Jasper county circuit court, make an order granting relators new trials in cases numbered 3409 and 3410. *Mandamus* will not lie to compel a judge to make an order or enter a particular judgment. (2) Relators claim that Hon. Edward C. Crow had no authority to pass on motions for new trial, and that his successor, Hon. J. D. Perkins, defendant herein, should have passed on defendants' motions for new trials and

sustained them. If relators' position is correct in this, still their writ of *mandamus* will not lie, because this question can be raised on writ of error. *Mandamus* will not take the place of writ of error or appeal. (3) Hon. Edward C. Crow, up to the time that he relinquished the office of judge of the circuit court and defendant entered upon the discharge of the duties of the same, was judge *de facto* of the circuit court, and as such, his acts in overruling motions for new trials of relators were as valid and binding as though he were *de jure* judge as well as *de facto* judge. *State v. Douglass*, 50 Mo. 593; *Harbaugh v. Winsor et al.*, 38 Mo. 327; *State ex rel. Henderson v. County Ct.*, 50 Mo. 317; *Morton v. Lee*, 28 Kan., top page 203; *Curtain v. Barton*, 34 N. E. Rep. (N. Y.) 1093; *Carpenter v. People*, 64 N. Y. 493; *Reed v. City of Buffalo*, 42 N. Y. 447; *State v. Carroll*, 38 Conn. 449; *People v. Petrea*, 30 Hun. 110; Thompson on Trials, sec. 33; Cook on Stockholders and Corp. Law [3 Ed.], sec. 713; Black on Judgments, sec. 176; *Mining Co. v. Anglo Cal. Bank*, 104 U. S. S. C. R. 192; *McDowell v. U. S.*, 159 U. S. 596. (4) It is the universal doctrine that a judge holding court under the circumstances that Judge Crow was holding just after his term had expired and before the judge *de jure* had assumed and entered upon the discharge of his duties, is a *de facto* judge, and his acts are valid. *Ostrander v. People*, 29 Hun. 513; *Blackburn v. State*, 3 Head. 690; *Gregg v. Jamison*, 55 Pa. St. 468; *Reed v. Buffalo*, 4 Abb. App. Dec. 22; *Carly v. Rhener*, 27 Minn. 292; *State v. Williams*, 5 Wis. 308; *Carey v. State*, 76 Ala. 78; *Threadgill v. Railroad*, 73 N. C. 178; *Woodside v. Wagg*, 71 Me. 270; Cook on Stockholders and Corporation Law, sec. 713. (5) Although a private individual assumed without authority the office of judge of a court which had a legal existence, yet its acts will not for that reason be void. *State ex rel. Henderson v.*

*Co. Court,* 50 Mo. 317.   (6)   It is an elementary prin-
ciple of law concerning the extraordinary remedy of
*mandamus,* that it will not issue to try the right of a
person to an office.   It is held that where there is a
vacancy it will issue to install the rightful officer, but
no vacancy existing it will not issue to try the right to
the office of the person assuming to discharge the du-
ties of the office.   *St. Louis County Court v. Sparks,* 10
Mo. 117; *State ex rel. Simmons v. John,* 81 Mo. 13.

SHERWOOD, J.—On December 31, 1894, Hon.
Edward C. Crow was appointed by the Governor of this
State, judge of the twenty-fifth judicial circuit, and the
appointee was commissioned to hold his office until his
successor should be elected and qualified.

This appointment was made under the provisions
of section 3276, Revised Statutes 1889, in consequence
of the Hon. W. M. Robinson, then judge of that
circuit, having been elected as judge of this court, and
before his time as circuit judge had expired, he having
resigned the latter position.

At the general election in the year 1896, the Hon.
Joseph D. Perkins was elected judge of the circuit
mentioned, and received his commission on the — day
of December, 1896.

Circuit court had been in session at Carthage, and
had been adjourned for the term at that place by the
Hon. E. C. Crow, and within thirty days after the
reception of his commission, respondent, in the presence
of Hon. E. C. Crow on the second of January, 1897, at
the court house in Carthage, took and subscribed the
oath of office as judge of the twenty-fifth judicial
circuit, and presented his commission with his oath of
office indorsed thereon to the clerk of the Jasper
circuit court.   Circuit court had been in session at
Joplin, Missouri, which is in Jasper county, on Decem-

ber 31, 1896, Hon. E. C. Crow presiding, and had been by him adjourned till January 4, 1897.

On December 28, 1896, two causes in which relators were defendants, to wit, numbers 3409 and 3410, which had been for some time pending in the circuit court at Joplin, were decided adversely to relators by the Hon. Edward C. Crow, and court was adjourned, on his order, to January 4, 1897, as already stated.

On December 31, the day of and after said adjournment, relators appeared before the clerk of the circuit court at Joplin, and in each of said causes presented for filing with such clerk, motions for new trials containing valid reasons therefor, but such clerk, though he marked said motions filed, refused to enter them on the vacation record or place them on the docket. On January 1, 1897, similar motions were also presented to the clerk for filing, with like result as before.

On January 4, 1897, Hon. Edward C. Crow arrived at Joplin, went to the courthouse, ascended the bench and ordered the attending officer to open court, which being done, counsel for the plaintiffs in the causes heretofore mentioned, and who now represent respondent herein, presented the motions for new trials therein filed January 1, 1897, and requested Hon. Edward C. Crow to pass upon and deny the same. But counsel for defendants in said causes, who are now relators in this proceeding, protested against the Hon. Edward C. Crow passing on said motions and denied his right to sit upon the bench or to exercise any jurisdiction in either of said causes. Other attorneys also present in the court room and not concerned in said particular causes, united with relators' attorneys in protesting against and denying the right of the Hon. Edward C. Crow to sit in any of the causes then pending in said court.

Thereupon said Hon. E. C. Crow *announced from*

*the bench that he was present when  Hon. Joseph D. Per-
kins, respondent  herein, qualified as judge of the Jasper
circuit court; knew that his own term of office had ex-
pired; that he made no claim that he was judge of said
court but that he was only disposing of business he had
left unfinished  on the thirty-first  day  of December, 1896.*
These admissions were made by Hon. E. C. Crow in
the presence of the attorneys for the plaintiffs in each
of the causes aforesaid, and consequently they knew
before said motions were passed upon all of the facts
just related, and that the term of office of said Crow
had expired.    At this juncture the respondent, Hon.
Joseph D. Perkins, came into the court room.   Hon.
E. C. Crow then announced that Judge Perkins could
take his seat whenever he so desired.   Judge Perkins
not coming forward, Hon. E. C. Crow proceeded to
pass upon and deny the motions for new trials, counsel
for relators declining to argue the motions for reasons
previously given by them.   Immediately on making
this ruling, Hon. E. C. Crow caused an entry to be
made reciting in effect that all of the unfinished busi-
ness of the court of Judge Edward C. Crow having
been finished and completed, he now formally retires
from office as judge of said court and turns the same
over to the Hon. Joseph D. Perkins, the duly elected,
etc., judge of this judicial circuit.

Upon Judge Crow's  leaving the  bench,  Judge
Perkins assumed it, and  treating the entries made on
the  record on  that day by  Judge Crow  like Thomas
Marshall said the administration of John Tyler  might
have been  treated, that is, placed in a  parenthesis
without affecting the sense of  the context, ordered the
court opened pursuant to the adjournment from Decem-
ber 31, 1896, and proceeded with the business as if
court had not already opened that morning.

Counsel for relators then filed  motions to expunge

from the record the entries made by Judge Crow, but Judge Perkins denied these motions, and also declined to pass upon the motions for new trials in the causes. Upon these facts which stand admitted by the motion to quash filed by respondent, relators have applied for a writ of *mandamus* to compel respondent to pass upon said motions for new trials.

Various provisions are to be found in our organic and statute law respecting the tenure of offices, judicial and otherwise. Section 30, of article 6 of the Constitution provides that the election of all judges of courts of record shall be held as may be provided by law, etc. And in case of vacancy in the office of judge of any court of record, section 32 of the same article requires that such vacancy be filled in the manner provided by law.

Article 14, section 5, of the Constitution, provides that: "In the absence of any contrary provision (whether constitutional or statutory not stated), all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified." Carrying into effect the foregoing constitutional provisions or attempting to do so, are to be found the following provisions of statutory origin:

*First.* Section 3317, Revised Statutes 1889, providing for the election of circuit judges, and their taking office on the first Monday in January next ensuing.

*Second.* Section 7121, Revised Statutes 1889, providing that all officers elected or appointed by the authority of the laws of this State, shall hold their offices until their successors are elected or appointed, commissioned or qualified. This section has been existent for many years. 2 R. S. 1855, p. 1108, sec. 3; G. S. 1865, p. 138, sec. 1; R. S. 1879, sec. 3330.

VOL. 139 mo—8

*Third.* Section 3276, Revised Statutes 1889 (R. S. 1879, sec. 1070), provides that: "If the office of the judge of any court of record of this State shall become vacant from death, resignation, or from any other cause, such vacancy shall be filled by the appointment of the Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term." This last section, a new one, having been enacted in 1879, may be regarded as a later expression of the legislative will and therefore a modification of what is declared in section 7121, *supra*, as to "all officers," etc., and also as a compliance with section 32, article 6 of the Constitution, which prescribes the manner in which a vacancy occurring in the office of the judge of any court of record shall be filled.

At common law where a statute specifies the duration of a term of office and the officer elected or appointed thereto serves out such term, his power and authority, as such officer, thereupon *ipso facto* cease, unless by law he be authorized to hold over. *People v. Tieman*, 8 Abb. Pr. 359; *People v. Tieman*, 30 Barb. 193; *Badger v. U. S.*, 93 U. S. 599; Mechem's Pub. Off., sec. 396 and cases cited.

This rule of the common law is evidenced by the generally uniform course of legislation whereby provision is made, wherever thought necessary, that the officer elected or appointed may continue in office until his successor be elected and qualified. Wherever such words are employed there can be no doubt that the duration of the power and authority of such holding-over officer will continue until his successor has been chosen and qualified. But where such words are omitted, it is sometimes a matter of doubt whether the right of the incumbent to hold over is clear.

The policy in this country (*wherever "civil service*

*reform," so-called, does not rear its monarchial and un-American head),* is certainly in favor of a requirement that all officers shall be elected or appointed for a fixed and definite period. This is shown by the care used to guard against lapses, by statutory provisions such as those already noted, and by the omission of such words where holding over is not deemed necessary or desirable for the public good. Sometimes, however, where words of holding over import are omitted, it may remain doubtful whether such a right was intended to be conferred. In which case the prevalent rule of construction in this country appears to be that if no restrictive words be used, no terms expressly or impliedly prohibiting holding over, that there such continuance in official power and life is permissible and valid, until a successor be chosen, etc. In illustration of this may be cited the *Queen v. Durham,* 10 Mod. 146, where it was held that though a town clerk be *"annuatim eligibilis,"* he may continue town clerk, and will do so, until they choose another," but that "if the return had been ' *eligibilis pro uno anno tantum'* (i. e., "for one year only") his office would have expired at the end of the year, whether they had chosen another or not." To the same effect, see *Tuley v. State,* 1 Ind. 500, and cases cited; 1 Dillon, Mun. Corp. [4 Ed.], secs. 219, 220, and cases cited; *McCall v. Byram,* etc., 6 Conn. 427; *State v. Harrison,* 113 Ind. 434; Mechem's Pub. Off., sec. 397 and cases cited.

Section 3276, it will be noted, uses the preposition *"until."* This is a restrictive word, a word of limitation; this is its ordinary and usual meaning, and under our statutory provisions (R. S. 1889, sec. 6570), as well as under the general rule of construction, this is the meaning which should be ascribed to it. This is the ordinary meaning of the term as has been expressly adjudicated. *Webster v. French,* 12 Ill. 302;

*Abel v. Alexander*, 45 Ind. 523; *People v. Walker*, 17 N. Y. 502; *Nichols v. Ramsel*, 2 Mod. 280; *Wicker v. Norris*, Cas. Temp. Hardw. 116.   See, also, *Kendall v. Kingsley*, 120 Mass. 94.

Besides the legislature, at the revising session of 1879, enacted section 3276, and retained section 7121, and therefore must be deemed cognizant of the difference between those sections, and intentionally used the limiting word *"until,"* and purposely refrained from using in section 3276 words granting the right to hold over after the expiration of a given time.   Nay, more, they made express provision that the *residue* of the term should be filled by *election*.   This amounts to the exclusion of a conclusion.

These considerations necessarily lead to the conclusion that Judge Crow's official term expired when the general election occurred in 1896, and could not be extended by reason of the fact that the commission he received from the Governor assumed to enlarge his official term (not only "until the next general election") but "until his successor qualified."   Mechem's Pub. Off., sec. 395; *Hench v. State*, 72 Ind. 297.

As to whether Judge Crow's acts were valid after the general election occurred, we are not called upon now to decide.   We are thus brought to consider the force and effect of Judge Crow's acts on the fourth day of January, 1897.   An officer *de facto* has been defined to be "one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law."   *King v. Bedford*, 6 East, 356.   Another definition given is that:   "An officer *de facto* is one who executes the duties of an office under some color of right, some pretense of title, either by election or appointment."   *Hooper v. Goodwin*, 48 Me. 79.

The foundation stone of this whole doctrine of a *de facto* officer, as gathered from all the authorities,

seems to be that of preventing the public or third persons from being deceived to their hurt by relying in good faith upon the genuineness and validity of acts done by a *pseudo-officer*. However much color of authority may clothe the person who assumes to perform the functions of an office and discharge its duties, yet, if the public or third persons are not *deceived* thereby, if they know the true state of the case, the reason which gives origin or existence to the rule which validates the act of an officer *de facto*, ceases; and with it cease also all of its ordinary validating incidents and consequences.

In the case before us there was no misapprehension on the part of the public or of third persons, because Judge Crow (whose term of office had indubitably expired at least when Judge Perkins, having been elected, was duly commissioned and qualified) proclaimed from the bench that he knew that Judge Perkins had qualified as judge, that his own term of office had expired, and that he did not claim that he was judge of the court, but was only disposing of business left unfinished on December 31, 1896. This being the case, there is no room in this record for the *de facto* doctrine to occupy. Consequently the acts of Judge Crow were *null and void*, and should have been thus treated by his successor in office, who should have proceeded as requested by counsel for relators, to pass upon and determine the motions for new trials.

Formerly, an incoming judge's only course when called upon to pass upon a motion for a new trial filed before his predecessor but undisposed of, was to grant such motion. *Cocker v. Cocker*, 56 Mo. 180; *Woolfolk v. Tate*, 25 Mo. 597. Since then, however, section 2171, Revised Statutes 1889, has been passed which enables an incoming judge to sign a bill of exceptions. This statute, in the light of prior practice, must be regarded

as a remedial one and therefore to be liberally construed with a view to effectuate its manifest purpose. Whenever a power is granted by statute, the grant of such power carries with it by necessary implication, everything necessary to make such grant effectual. Sutherland Stat. Construc., secs. 341, 343, 344; 2 Beach Pub. Corp., sec. 1314; *Ex parte Marmaduke*, 91 Mo. *loc. cit.* 251, 262; 1 Kent Com. 463, 464.

In the case at bar in legal contemplation, the motions for new trials *had been passed upon by a wholly unauthorized person, and therefore not passed upon at all.*

We believe that the power to sign a bill of exceptions carries with it as a coincident right, the right to pass upon the motions for new trials, without which in the case at bar the power to sign a bill of exceptions would be worthless and wholly ineffectual.

Moved by these considerations, we award the peremptory writ.   All concur.