**MANNING v. HARLAN, Mayor, et al.**

No. 3765.

Court of Civil Appeals of Texas. El Paso.

Nov. 23, 1938.

Rehearing Denied Dec. 8, 1938.

Travis White and McBroom & Clayton, all of El Paso, for appellant.

Ernest Guinn, City Atty., and Coyne Milstead, Asst. City Atty., both of El Paso, for appellees.

NEALON, Chief Justice.

This is an appeal from an order of the District Court of El Paso County denying appellant a writ of mandamus which he

sought to have directed to M. A. Harlan, Mayor, and W. E. Casteel, Brice W. Schuller, L. A. Fail, and L. J. Reynolds, Aldermen, of the City of El Paso. By the terms of the Charter of said City, which is a Home Rule City, the City Council is composed of the Mayor and four Aldermen. The trial court made findings of fact as hereinafter stated, and these findings were unchallenged. In 1917 a charter amendment was adopted providing for the creation of a Civil Service Commission to have supervision of the Fire and Police Departments and to consist of three members to be appointed by the Mayor with the approval of the Council for a term of two years. The name of the Commission was to be the Fire and Police Civil Service Commission. At an election held in 1935 the charter was again amended placing, with certain named exceptions, the other agents and employees of the City under a Civil Service system to be administered by three commissioners functioning under the name of the Civil Service Commission. These commissioners were also to be appointed by the Mayor with the approval of the Council and to hold office for two years. Among the exceptions to the jurisdiction of the last named commission were the employees of the Fire and Police Department. The 1935 amendment further provided that the City Council might, by ordinance, consolidate the two commissions. The Commissions as provided for in each amendment were duly appointed and exercised the jurisdictions conferred by the respective amendments until April 29, 1937, when the City Council, by ordinance, consolidated the two commissions under the name of City Civil Service Commission. This ordinance provided that the Commission should consist of five members. At the time of its passage Gowan Jones was a member of the Civil Service Commission, having held over from a previous administration. The terms of the other members of both Commissions having expired on May 6, 1937, the Mayor, with the approval of the City Council, appointed Messrs. Earl Maxon, Dan Cook, W. R. Blair and J. W. Donahue, members of the consolidated commission. The Mayor considered Mr. Jones a member of the consolidated commission and conferred with him as such and the City Council dealt with him as such. The consolidated commission organized with Gowan Jones as chairman and commenced to function as a consolidated commission. On July 16, 1937, a controversy arose between Mr. Jones, the chairman of the commission, and the Mayor. On the next day, July 17, 1937, the City Council passed, with an emergency clause, an ordinance purporting to repeal the ordinance of April 29, 1937, consolidating the two commissions; and two days later, on July 19, 1937, the Mayor notified Messrs. Maxon, Cook and Jones that they had been removed from office. See Jones v. Harlan, Tex.Civ.App., 109 S.W.2d 251. Gowan Jones took the oath of office as a member of the consolidated commission July 21, 1937. In due time he had taken and filed his oath as a member of the Civil Service Commission. Commissioners Cook and Blair took and filed their oaths of office July 21, 1937, and Commissioner Donahue did the same on July 23, 1937.

The Mayor, acting on the theory that the repealing ordinance of July 17, 1937, was a valid ordinance, on the 22nd day of July, 1937, appointed Messrs. Windberg, Maxon and Homan, as members of the Fire and Police Commission, and on July 22, 1937, appointed Frank Ashe as a member of the Civil Service Commission. On the 23rd he also appointed Ralph Blair a member of said commission. On the same day, the Mayor, to guard against any mistake as to the correctness of his theory as to the validity of the repealing ordinance of July 17, 1937, appointed Messrs. Ashe, Blair, Maxon, Windberg and Homan, as members of the City Civil Service Commission. All the appointments of the above named individuals to the offices named were duly approved by the City Council, and on the day of appointment, each of said defendants took the oath of office for the office to which he had been appointed.

Relator Milo Manning had been an employee of the City continuously from the early part of 1931. During the last few years of his employment he was foreman of the City corral. May 28, 1937 the Mayor notified Manning of his removal from this position. This removal was based on the theory that there had been a consolidation of various departments of the City Government, that Manning's services were no longer needed, and the position of City corral foreman, which he had been holding, had been abolished. The Mayor, in taking this action, relied upon Section 19 of the amendment of 1935, which is in part as follows: "The Civil Service provision of this amendment shall not in any wise limit or restrict the power of the

Mayor and City Council of the City of El Paso, to abolish at any time, any office or department of the City Government. Employees taken out of service for the purpose of effecting economy, reducing personnel, or by reason of the abolition of any office or department of the City Government, shall retain their seniority, and shall be certified by the Civil Service Commission for re-employment in any subsequent vacancy for which they may be fitted, in the order of their seniority, and in preference to the employment of applicants not holding seniority rights."

On May 31, 1937, in conformity to provisions of the City Civil Service amendment to the Charter, Manning filed with the Secretary of the City Civil Service Commission an appeal from the action of the Mayor and City Council. This appeal was set for hearing prior to the time the controversy arose between the Mayor and the members of the Commission. Manning claimed protection under Section 22 of the 1935 amendment which provided that the Civil Service provisions of the amendment should apply to all employees of the City "who had been in the employ, whether full or part time * * * since March 1, 1934"; and further provided that employees meeting those qualifications should without preliminary or performance tests be admitted to the benefits and protection of the Civil Service provisions and entitled to seniority rights dating from the first day of their employment with the city. On July 21, 1937, after Messrs. Jones, Blair and Cook had taken their oaths as aforesaid, they met as the Commission and entered an order reciting that Manning had been illegally removed from his position, ordering him to be reinstated in that position at his former salary, and providing that the City should pay his salary from June 2, 1937. The order further provided that it was to be without prejudice to the rights of the Mayor and Council and the head of the department, by proceedings properly taken under the Civil Service amendment, as conditions might be shown to require, to remove from the employ of the City at the City corral an employee subordinate to Manning who had been in the employ of the City for a shorter period of time than Mr. Manning had, the salary of Manning to be then reduced to that being paid such employee, and such employee's seniority rights to be determined as inferior to those of Mr. Manning. Neither the Mayor nor any member of the Council was apprised beforehand of the time at which the Commission would act upon Manning's appeal.

The Charter amendment authorized the Commission to adopt rules and regulations. A code of rules and regulations was adopted which, among other things, provided that a person who had received a permanent appointment in a competitive class and had been separated from the service by reason of lack of funds, lack of work, or reduction in force, and without delinquency or misconduct upon his part should have his name placed at the head of the lay-off list for re-employment; that employees so placed should remain for a period of two years and retain the same status and seniority that they possessed at the time of their lay-off, and that the lay-offs should be made in the reverse order of seniority; that department heads or appointing officers might reduce in rank or demote to lower grades of wages employees when such action became necessary on account of lack of work or lack of funds, subject to the right of the Civil Service Commission to investigate the manner and reasons for the reduction and order restoration of position and grade if deemed advisable, and subject to these qualifications that the employees first reduced or demoted should be those last certified to the class or grade in which the reduction or demotion was to be made.

Section 10 of the City Charter provides that every person elected to office by the City Council or appointed by the Mayor shall, within twenty days thereafter, qualify and enter upon the discharge of his duties, and in default thereof his office shall be deemed vacant and the City Council or the Mayor, as the case may be, shall proceed to fill the same by a new election or appointment. Section 12 of the Charter provides that every person elected or appointed under the Act granting the charter, or under any ordinance of the City, "shall, before entering upon the duties of his office, take and subscribe the official oath prescribed in the Constitution of this State," etc. Section 10 of the Charter likewise grants to the Mayor "the authority at will to suspend, without pay, or remove, any officer or agent appointed by him," etc. The Charter amendment of 1917, Section 10f, provided that "as to officers and employees of the City not placed under this Commission, the present Charter shall remain in full force and effect as to such appointment, removal, etc." The amendment of 1935 likewise provided that the existing provision of the Charter of the City of El

Paso should remain in full force and effect as to the appointment and removal of all officers and employees of the City of El Paso not placed under the jurisdiction of the Civil Service Commission created by said amendment.

The court refused the writ of mandamus on the ground that prior to the 21st of July, 1937, "the individuals purporting to act as Civil Service Commissioners had been lawfully removed from office by the Mayor and had not the legal right to act as members of such commission." It is conceded that at the time these gentlemen entered their order on the 21st of July, 1937, they had received notice of their removal, and the attorney for appellant likewise had notice of their removal.

### Opinion.

To some extent the situation presented by this case is the outgrowth of the controversy that resulted in the case of Jones v. Harlan, decided by this Court and reported in 109 S.W.2d at page 251. Counsel for appellant, among other assignments of error, questioned the right of the Mayor to remove the members of the Commission and make the removal effective from the time the removed Commissioners received notice. They question the soundness of our former opinion. However, writ of error was sought in that case and the application dismissed for want of jurisdiction. The decision therein made is in harmony with the principles enunciated in Mechem on Public Offices and Officers, Sec. 406, and in Keenan v. Perry, 24 Tex. 253. It has been cited with approval by the Amarillo Court of Civil Appeals in Ratliff v. City of Wichita Falls, 115 S.W.2d 1153, in which case application for writ of error was dismissed. We still believe it sound. It is therefore adhered to in the present case.

 Assuming, however, that we were correct in Jones v. Harlan, supra, and that the Mayor possessed the power at will to remove the members of the City Civil Service Commission, with or without cause, and with or without the approval of the City Council, appellant insists that under Art. 16, Sec. 17 of the Constitution of Texas, Vernon's Ann.Civ.St.Const. art. 16, § 17, the Commissioners who acted in his case were within their rights in passing upon his appeal and in determining that he should be restored to his position. That article provides that all "officers within this State shall continue to perform the duties of their offices until their successors shall

be duly qualified." Appellant contends that since the appointees of the Mayor named to succeed the removed commissioners did not qualify until the 22nd of July, the action of the removed commissioners, upon which appellant bases his claim, was effective. We think the authorities are to the contrary. It must be borne in mind that these gentlemen, at the time they assumed to act in this matter, were not officers de jure. They had not taken the oath required by the City Charter prior to their removal. The State ex rel. Bickford v. Cocke, 54 Tex. 482, 486; Odem v. Sinton Ind. School District, Tex.Com.App., 234 S.W. 1090. Upon convincing authority it is said that the right to hold over until the qualification of a successor does not reside in one who has been removed from office. Mechem, Sec. 400; Hyde v. State, 52 Miss. 665. The rule is stated by the Supreme Court of Mississippi, which, in discussing a constitutional provision similar to Article 16, Sec. 17 of our Constitution, said: "This manifestly refers to officers holding over after the expiration of their terms, and not to such as may have been adjudged to have forfeited their offices by the judgment of a court of competent jurisdiction. Such judgments, like all other judgments, take effect from their rendition, and produce an instantaneous vacancy in the office." Hyde v. State, supra. Whether this proposition is correct in its broadest sense or not, we think that in a case of this character where the power of removal is absolute and has been exercised and notice thereof conveyed to the removed officer and a successor appointed, the vacancy is complete and the former officer's authority is ended as completely as a court could have ended it. Keenan v. Perry, supra.

 We come then to appellant's claim that as to him the order of reinstatement is valid, because those who made it were at the time de facto Civil Service Commissioners. In Biencourt v. Parker, 27 Tex. 558, our Supreme Court quoted with approval a statement of the conditions that must obtain before one may be regarded as a de facto officer. It is there said: "There must be at least some colorable election and induction into the office ab origine and some action thereunder, or so long an exercise of the office and acquiescence therein of the public authorities, *as to afford to an individual citizen a strong presumption that the party was duly appointed; and therefore, that any person might compel him, for*

*the legal fees, to do his business, and for the same reason was bound to submit to his authority, in such official capacity."* Mr. Manning was not in the position of one who might rely upon the asserted authority of the removed commissioners. To him is imputed his attorney's knowledge of the order of removal and of the appointment of successors. This knowledge precludes his successful reliance upon the "de facto doctrine." As said by the Supreme Court of Missouri in State ex rel. Cosgrove v. Perkins, 139 Mo. 106, 40 S.W. 650, 652: "The foundation stone of this whole doctrine of a de facto officer, as gathered from all the authorities, seems to be that of preventing the public or third persons from being deceived to their hurt by relying in good faith upon the genuineness and validity of acts done by a pseudo officer. However much color of authority may clothe the person who assumes to perform the function of an office and discharge its duties, yet, if the public or third persons are *not* deceived thereby,—if they know the true state of the case,—the reason which gives origin or existence to the rule which validates the act of an officer de facto ceases; and with it cease, also, all of its ordinary validating incidents and consequences." Of similar import is the statement in State ex rel. Fulgham v. Johnson, 40 Ga. 164, that the acts of an ousted officer are null and void.

For the reasons stated we think the contentions of appellant are lacking in merit. All assignments of error are overruled. The judgment of the trial court is affirmed.