Victor C. JOHNSON and Beulah J. Johnson,
Plaintiffs in Error,

v.

Joseph E. JOHNSON, Defendant in Error.

No. 35937.

Supreme Court of Oklahoma.

Jan. 19, 1967.

Pierce, Mock, Duncan, Couch & Hendrickson, Ames, Daugherty, Bynum, Black, Ashabranner & Rogers, Oklahoma City, for plaintiff in error, Beulah J. Johnson.

Suits & Weiss, by Fred E. Suits, James E. Grigsby, Oklahoma City, for petitioner, Victor H. Johnson, Executor of the Estate of Joseph E. Johnson.

HORACE D. BALLAINE, Special Justice.

This case is an outgrowth of the recent public disclosure that Nelson S. Corn, a former member of this Court, had by his own admission been guilty of taking bribes in certain cases since some time early in his first term of office, which commenced in 1935. The question we are now called on to decide is the effect of Corn's participation, during the years when his corruption was undiscovered, in decisions of this Court in which there is no allegation or evidence that he acted corruptly. In short, the question is whether every decision in which he cast the deciding vote during such period should now be set aside, or whether only those decisions in which there is evidence that he acted corruptly should be set aside.

The opinion sought to be vacated here was handed down in October of 1954, and is reported as Johnson v. Johnson, Okl., 279 P.2d 928. The opinion was adopted by the vote of five Justices, among whom was Justice Corn. The decision reversed

the order of the trial court and ordered a certain instrument admitted to probate as the last will of Dexter G. Johnson, deceased. Upon issuance of the mandate, the estate of Dexter G. Johnson was distributed by the County Court in accordance with the terms of the instrument admitted to probate as his Last Will and Testament. There the ·matter rested until August 10, 1965, when a petition to vacate the opinion of October, 1954, was filed by Victor H. Johnson, Executor of the Estate of Joseph E. Johnson, the original defendant in error, who is now dead. In this opinion Victor H. Johnson will be referred to as Petitioner, and Beulah J. Johnson, one of the original plaintiffs in error and successor to the interest of her deceased brother, Victor C. Johnson, the other original plaintiff in error, will be referred to as Respondent.

The petition to vacate the former opinion is based generally upon the recent disclosures and happenings relating to the dishonesty of Justice Corn and others. These matters, some of which are contained in the stipulation hereafter referred to and some of which we judicially notice and recite here for the sake of fairness and clarity, are as follows:

Nelson S. Corn was first elected to this Court in 1934 and served continuously until January of 1959. He then became a supernumerary justice until his resignation in July of 1964. At that time he entered a plea of nolo contendere to a federal charge of filing false income tax returns and was sentenced upon such plea. On December 9, 1964, while serving his sentence, he made a statement under oath setting out ·the details of his dishonesty. From this statement, and from other evidence before us, it appears that during his first term of office he made a bargain with an Oklahoma City attorney that in return for payment of campaign expenses he would vote as the attorney directed "as a sixth man" in any case where there were already five votes in favor of an opinion. The attorney created a campaign fund for him and gave him money from time to time after Corn

had voted as he directed. In later years, it is apparent, the agreement to vote only in cases where a majority was already in favor of the opinion was disregarded and Corn voted as the attorney desired in any case where he was requested to do so. Corn also stated that in certain cases (arising after the decision in this case in 1954) he had received large bribes for favorable opinions and that he had given part of a bribe to two former justices of this Court, one of whom has now been impeached, and the other of whom has resigned both from his office and from the Bar.

Upon disclosure of the above matters the Oklahoma Bar Association created an investigating committee (to which this Court gave broad powers of subpoena and compulsory attendance of witnesses) for the purpose of determining whether further corruption existed on this Court. The Committee was assisted by a committee of laymen appointed by the Governor. Each individual justice of this Court waived any immunity he might have had and testified before the committee. Those of us who are special justices in this case feel that in fairness to all the justices now on this Court it should be said that after exhaustive hearings in which all evidence which any citizen desired to present was heard, and in which complete property and financial records and tax returns of all concerned were examined, the committee completely exonerated all the justices now on this Court from any suspicion of wrongdoing. The Bar committee reported that each of the present justices was honest and had been guilty of no wrongdoing. The Governor's citizens' committee said that "not one iota of suspicion" had been cast upon them. See the final reports of these committees contained in 36 Okla.B.A.J., at pages 601 and 704 (1965).

All of the above recitations are matters of public record and there is little need to dwell on further details here. It is sufficient to say that the members of this Court were as appalled by the revelations of the

dishonesty which had taken place as was the public at large.

In his petition to vacate the opinion and judgment in this case, Petitioner originally requested the appointment of a referee, with power of subpoena, to hear evidence.

However, before any action was taken upon such request the parties to this proceeding apparently decided that they first wanted a decision of this Court upon the purely legal question of whether or not the decision here involved was void as a matter of law (regardless of whether any wrongdoing in its procurement existed or did not exist) either because:

 a) Corn had, before participating in this case, forfeited his office and become disqualified to hold future office by taking bribes in other cases, or because

 b) Corn was disqualified to participate in this case by reason of his continuing agreement with the Oklahoma City attorney and by reason of his having taken bribes from him.[1]

To procure a decision upon this question the parties entered into a stipulation, the pertinent parts of which, so far as this case is concerned, are as follows:

 "1. The sole issue of the Petition to Vacate filed herein, subject to the reservations set forth in Paragraph 8 is whether N. S. Corn was a member of the Supreme Court of Oklahoma in 1953 and 1954 and entitled to participate in the decision in the case of Johnson et al. vs. Johnson, reported in 279 P.2d 928. For the purpose of this stipulation there is no contention that there was any bribery in said case. The respective contentions of Petitioner and Respondent are set forth in Paragraphs 5 and 6.

 * * * * * *

 "4. Neither the Petitioner nor the Respondent nor the public generally knew of the alleged 'arrangement' between N.

S. Corn and * * * (the Oklahoma City attorney) as set forth in said statements until about the date of the first statement.

 * * * * * *

 "7. Petitioner and Respondent agree that if the issue set forth in paragraph 1 hereof is decided in favor of Respondent, the Petition to Vacate should be dismissed. However, Petitioner and Respondent disagree as to the consequences of the decision of said issue in favor of the Petitioner, and subject to the Court's approval that question is postponed.

 "8. The foregoing stipulation is submitted to the Court as the basis for a decision on Petitioner's Petition to Vacate herein. It is submitted without prejudice to any other grounds for the vacation of said judgment which may or could develop hereafter, and Respondent shall be entitled to assert any and all defenses against any subsequent effort to vacate said judgment."

To make certain that the parties intended to stipulate that there was no wrongdoing of any kind in this case, we asked them upon oral argument whether the stipulation that there was no "bribery" in this case including wrongdoing of all kinds and each side replied affirmatively.

 We proceed then to decide the issue tendered by the stipulation. The issue, as we view it is: Where a judge secretly agrees to take bribes from an individual and does take them consistently, but such fact is unknown except to him and the bribe giver, does he thereby automatically forfeit his office, or automatically become disqualified to participate in any further decision of the Court, so that his every vote thereafter is a nullity, even in cases where no wrongdoing occurred?

Our answer is in the negative. In reaching this conclusion we have been guided not only by our views of the statutes, con-

---

 1. Petitioner contends that if Corn had either forfeited his office or become disqualified, then the decision was void because it was not concurred in by a ma- jority of the Supreme Court as required by Section 3 of Article VII of the Oklahoma Constitution.

stitutional provisions and decided cases, but also by our views as to the public harm which would ensue were our decision otherwise.

It is apparent that if our holding were in the affirmative every decision from 1938 [2] to January of 1959 in which Corn cast the deciding vote would have to be set aside. There are more than one thousand such cases. Rights of every kind have been settled by the decisions in such cases. Marriages have been contracted upon the basis of divorces granted, titles have been transferred and judgments paid. To now go back and reopen every such case for a possible new decision requiring new arguments and new hearings would cast intolerable and unjust burdens upon all the parties. Titles and status long thought put at rest would be thrown open to doubt. It would indeed create a "shambles" as Respondent contends. And this would be so in every case in which Corn cast the deciding vote even though no corruption occurred in such case.

To us this result seems unthinkable and contrary to the most elementary principles of justice. We think it more just that those cases in which no corruption can be found should be allowed to stand, at the same time giving full right to any person who believes that any such decision has been corruptly obtained, to petition this Court for a hearing, in which, if corruption can be shown, the decision may be set aside.

■ We do not, however, rest our decision upon such considerations alone. In our opinion the statutes or constitutional provisions relied on by Petitioner do not provide for an automatic forfeiture of office in the absence of judicial determination that grounds exist therefor nor do they provide for disqualification to hear a case in the absence of prejudice, wrongdoing or interest in the particular case heard.

To sustain his contention that Corn automatically forfeited his office when he took his first bribe in 1938, and that he was ineligible to hold office thereafter, Petitioner relies upon 21 O.S.1961, § 382, which reads:

"Every executive, legislative, county, municipal, judicial or other public officer, or any person assuming to act as such officer, who corruptly accepts or requests a gift or gratuity, or a promise to make a gift, or a promise to do an act beneficial to such officer, or that judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith, or that in such capacity he shall make any particular nomination or appointment, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the laws of this State, and be punished by imprisonment in the State penitentiary not exceeding ten years, or by fine not exceeding five thousand dollars and imprisonment in jail not exceeding one year."

It will be noted that this statute provides that public officers who violate its terms shall forfeit their office, be disqualified to hold public office *and* "be punished" by fine and imprisonment or both. Petitioner contends that under this wording the forfeiture and disqualification provisions of the statute come into play automatically upon a violation of the statute without the necessity of a conviction. He argues, therefore, that Corn forfeited his office and became disqualified to hold further office at the time he took his first bribe, even in the absence of a conviction for such offense, and even though his crime was known to no one but himself and his bribe giver.

---

2. The year 1938 is assumed. Corn's statement to the Federal authorities was that his bargain with the attorney was probably made in 1938, but in other testimony he said it was in 1936.

Respondent, on the other hand, argues that the statute is a criminal one and that none of the penalties provided therein occur or may be imposed until a conviction in a criminal proceeding is had.

For the purposes of this case it is not necessary that we decide whether the statute requires conviction in a criminal proceeding, where guilt would have to be proved beyond a reasonable doubt, before forfeiture of office and disqualification to hold office would occur. It may well be that under the wording of the statute a formal adjudication of guilt in a civil proceeding where the officer was afforded the safeguards required by due process, would be all that would be required to remove him from office, and that conviction in a criminal proceeding would be necessary only to impose the "punishments" of fine and imprisonment. On the other hand, it may also well be that Respondent is correct and that none of the penalties prescribed by the statute occur or may be imposed until a conviction in a criminal proceeding has been had. We leave such question for determination when the necessity therefor arises.

■ We think it plain that in any event the statute requires at least a formal adjudication of the officer's guilt in some regular proceeding with formal allegations of his misdeeds, due proof thereof and full opportunity to defend. We are not willing to hold that the Legislature intended so drastic a result, without adjudicative proceedings of some kind adequate to protect the officer's legitimate interests.

Respondent also contends that such statute is not applicable to a justice of the Supreme Court in any event since under Sections 1 and 2 of Article VIII of our Constitution, Justices of the Supreme Court are subject to impeachment and, under Section 2 of such article it is only officers "not liable to impeachment" who "shall be subject to removal from office in such manner and for such causes as may be provided by law." There is a body of law in other states construing similar con-stitutional provisions and holding that where impeachment is constitutionally provided as the method of removal of named officers, the Legislature may not constitutionally provide for removal by other means. See e. g. Conroy v. Hallowell, 94 Neb. 794, 144 N.W. 895 (1913) and 43 Am.Jur. Public Officers § 182.

We do not reach such question here, however, since, as we have said, we think it plain that 21 O.S.1961, § 382 requires at least a formal adjudication of guilt in a proceeding where due process is afforded, and may even require conviction in a criminal proceeding. Since no proceeding of either character was ever had, there was no forfeiture of office or disqualification to hold future office under the statute.

Petitioners' cases relating to quo warranto and other special proceedings are not in point here. In none of such cases is there a holding that a guilty officer automatically forfeited his office without a hearing, and so far as we can determine there are no such cases reported anywhere.

We turn next to the question of whether Corn was disqualified from participating in decisions of this Court (even though he was not disqualified to hold office) because of his having taken bribes in prior cases and because of his continuing corrupt agreement with the Oklahoma City attorney.

■ It is urged that his disqualification arises by reason of Section 6 of Article II of our Constitution, which provides:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy be afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

It is argued that even if Corn held his office legally, and even if he was guilty of no wrongdoing in this case, his continuing agreement with the Oklahoma City attorney was of so corrupt a nature that under the above quoted Constitutional provision he was disqualified to *participate* in any case

whatever, and that such disqualification existed although known to no one but him and the Oklahoma City attorney.

We do not so read the Constitutional provision. It provides that a remedy shall be provided for every wrong and every injury and that right and justice shall be administered "without sale, denial, delay or prejudice". We believe that such provisions apply separately to each individual case. If a decision is rendered in a particular case without sale, denial, prejudice or wrongdoing of any kind, then, even though the decision be participated in by a judge who has been corrupt in other cases, we think the requirements of the provision have been met. In this case the parties have stipulated (for the purpose of the resolution of the question we are now deciding) that there was no wrongdoing in this case. It follows· that under the issues herein presented by the stipulation the Constitutional provision was not · violated.

It is true that under the above Constitutional provision we have held that where a judge · is apparently prejudiced against a party or his conduct has been such. that a party is afraid to try his case ·before him, such judge, upon application, will be required to disqualify in that particular case. The reasoning in these cases is that no one should be required to try a case before a judge who, because of. particular circumstances, he has reason to believe will not give him a fair trial. To force a trial before the judge under such circumstances would, of course, undermine confidence ·in the judicial process.

■ But these cases, and cases of like tenor, are a far cry from the ruling sought here. Here a ruling is sought that because Corn entered into a corrupt bargain with the Oklahoma City attorney every case in which he cast the deciding vote while such agreement continued must now be set aside, even though such agreement had no bearing on his vote and regardless of whether the case was fairly decided. It may be true that if litigants had known of Corn's bargain they would not have wanted

him to sit in judgment in their cases, but we do not believe that such fact alone, having now come to light, is sufficient to justify the setting aside of every case in which he cast a deciding vote in the absence of evidence that his corrupt bargain influenced such decision, nor do we believe that Section 6 of Article II of our Constitution requires any such result.

It has also been suggested that if we held that Corn was disqualified to participate in any decision while his bargain remained in effect the harshness of the result might be tempered by adopting the rule prevalent in the cases pertaining to defacto officers. The result of adopting such rule would be to make the decisions in which he cast the deciding vote prima facie void, but sustainable if the party receiving the benefit of the judgment could prove that the party obtaining the judgment was guilty of no wrongdoing. We think it would be unjust and unwise to place such a burden upon those claiming the benefits of the judgments. As we have said, there are more than one thousand such judgments dating back as far as twenty-six years. Many participants in such cases are now deceased. In the intervening years the parties have scattered, papers have been lost, and even to recall the particulars of the case would in many cases be difficult. We believe justice will be better served by adhering to the estbalished rules and limiting the· vacation of our judgments to those cases where there is at least some evidence that wrongdoing influenced the decision.

■ It should be said here that we have no doubt of our jurisdiction or power to grant relief in any case where corruption can be shown to have influenced a decision of this Court. We have inherent equitable power to protect the integrity of our judgments and this power includes the power to conduct inquiries as to whether any judgment has been obtained by corrupt means. Root Refining Co. v. Universal Oil Products Co., 3 Cir., 169 F.2d 514. The only limitation upon our power is that in the investi-

gation, once it is commenced, the rights of the parties to be affected must be safeguarded by the practices ordinarily observed in adversary proceedings. Universal Oil Products Company v. Root Refining Company, 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447. See also generally Restatement of the Law, Judgments, Section 124.

It should be noted that our decision here goes no further than the narrow issue submitted by the stipulation. All that we hold, or mean to hold, is that Corn did not automatically forfeit his office, automatically become disqualified to hold office, or automatically become disqualified to sit in every case arising after his corrupt bargain with the Oklahoma City Attorney.

 This Court is, and will be, open to any litigant who can come forward with evidence that any decision was obtained by corruption of any kind.

Neither do we mean to indicate whether the facts in this case, in the absence of the stipulation, are or are not sufficient, with or without further evidence, to set the questioned decision aside.

Under the stipulation the present petition must be dismissed. Nothing herein, however, is to be taken as prohibiting its refiling.

IRWIN, C. J., HODGES, V. C. J., LAVENDER and BERRY, JJ., and LEE R. WEST and ROBERT HARBISON, Special Justices, concur.

MAURICE MERRILL, Special Justice, concurring specially in results.

SAMUEL T. ALLEN, Special Justice, concurring in results.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS and BLACKBIRD, JJ., having certified their disqualification in this case, Honorable HORACE D. BALLAINE, Tulsa, Oklahoma, Honorable ROBERT HARBISON, Altus, Oklahoma, Honorable LEE R. WEST, Ada, Oklahoma, Honorable MAURICE MER-RILL, Norman, Oklahoma, and Honorable SAMUEL T. ALLEN, Sapulpa, Oklahoma, were appointed Special Justices in their stead.

MAURICE MERRILL, Special Justice (Concurring Specially in the result).

In the decision that 21 O.S. (1961) § 382 does not terminate automatically the tenure of an officer who violates its prohibitions, and in the reasoning supportive thereof in the opinion of the court, I concur fully. An entirely different problem is raised by the petitioner's invocation of Article Two, Section Six of our Constitution. This eloquent paraphrase of the promise exacted by the barons of England from King John in Chapter 40 of Magna Charta, "To no one will we sell, to no one will we refuse or delay, right or justice", conveys to me, as an original proposition, a broader scope and a more commanding imperative than my brethren find in it, a reading confirmed, I think, by the course of interpretation followed by this court in expounding the constitutional provision.

In the past, this court has accorded a sweeping recognition to the high aim and the unequivocal imperative of this provision. It has declared the provision to be "self-executing", and "sufficient, in the absence of statute, to disqualify a judge on account of bias or prejudice". State ex rel. Smith v. Brown, 24 Okl. 433, 103 P. 762 (opinion by Mr. Justice Robert L. Williams, himself a member of the Constitutional Convention). Compare, Mayes v. Pitchford, 26 Okl. 129, 109 P. 821, in which this court approved the opinion of the Criminal Court of Appeals in Ex Parte Hudson, 3 Okl.Cr. 393, 106 P. 540, 107 P. 735. ("The clear meaning of this provision is to prohibit the trial of any cause by a judge or juror who are prejudiced against either party to the cause. *Prohibitive clauses of a constitution are always self-executing and require no legislative provisions for their enforcement.*") (Emphasis supplied.) The provision has been applied to trial judges, through use of this Court's superintending control to compel them to disqualify themselves in proper

cases when they have declined to do so voluntarily. Boxley v. Wright, 84 Okl. 45, 202 P. 306; State ex rel. Garrett v. Freeman, 102 Okl. 291, 229 P. 296; State ex rel. Wilcox v. Bird, 179 Okl. 594, 67 P.2d 966; State ex rel. Larecy v. Sullivan, 207 Okl. 128, 248 P.2d 239. It has been applied to members of this court's own bench. State ex rel. Short, Attorney General v. Martin, 125 Okl. 24, 256 P. 681. The court has found occasion for its application where a judge's conduct had given each party to the litigation ground to fear that he had sold himself to the other, Boxley v. Wright, supra; where there was reason to suspect the subjection of the judge to the claims of personal and political obligations toward a party and his attorney, State ex rel. Larecy v. Sullivan, supra; where the judge was under financial obligation to lawyers in the case, State ex rel. Garrett v. Freeman, supra; where business and professional relations between the judge and one party and the latter's lawyer threw doubt upon the judge's impartiality, State ex rel. Wilcox v. Bird, 179 Okl. 594, 67 P.2d 966. The court has said that there is ground for disqualification if the result of sitting in judgment would be to "weaken the confidence of the public in the integrity of the court", State ex rel. Garrett v. Freeman, supra. It has said that "whatever the conduct" of the judge "may have appeared to be, or whatever his real intentions may have actually been", he is disqualified if his acts "were of such character as to give rise to doubt on the part of the parties to the suits as to whether he would render a just decision, and such as gave rise on the part of the public to a belief that he had accepted a bribe". Boxley v. Wright, supra. Throughout, the court's object in the application of this constitutional provision has been not only an administration ensuring that justice has been done, but, also, public confidence that it has been done.

I can conceive of no conduct more specifically within the condemnation of this provision than that confessed to by Nelson S. Corn. Regardless of whether influence, malice, or specific bribery actually might be brought to bear in the particular case, what litigant, knowing the facts, would feel safe in entrusting his cause to the rulings of Mr. Justice Corn? What confidence could the public have in the integrity of a judgment reached by his decisive vote? Politically and monetarily be subjected himself to another. He held himself at the beck and call of an unseen manipulator. Nothing more antithetical to the concept of ordered justice under law can be imagined. Nothing could flout more arrogantly the command that justice shall not be sold, denied, delayed or prejudiced. Without question Nelson S. Corn became disqualified to sit in judgment from the very day that he entered into his disgraceful bargain, and this disqualification continued so long as the bargain continued in effect. Under the facts before us, this was until he left the bench at the close of his last term. He owed the duty, in each case, to refuse to sit, regardless of public knowledge of his disqualification. Moses v. Julian, 45 N.H. 52.

This court has ruled that judicial action taken by a constitutionally disqualified judge is a nullity. State ex rel. Garrett v. Freeman, supra, and cf. State ex rel. Short, Attorney General v. Martin, supra, 125 Okl. at 29, 256 P. at 685. This view prevails in other jurisdictions. Watson v. Payne, 94 Vt. 299, 111 A. 462 and authorities cited therein; Giometti v. Etienne, 219 Cal. 687, 28 P.2d 913 (review of intermediate court granted by necessary concurrence of a judge statutorily disqualified by relationship to counsel, apparently overlooked, held void); Gaer v. Bank of Baker, 111 Mont. 204, 107 P.2d 877 (order authorizing administratrix to borrow from bank made by judge who turned out to be stockholder, officer, and director of bank, held void under statute prescribing disqualification for interest); Templeton v. Giddings, 12 S.W. 851 (Tex.) (judgment entered on note which had been assigned as collateral to secure debt owed by assignor firm of which judge was a member held void under constitution disqualifying judge for "interest"; judgment therefore could not support a title based on purchase at execution sale there-

under); Postal Mut. Indemnity Co. v. Ellis, 140 Tex. 570, 169 S.W.2d 482 (judgment fixing attorneys' fees for firm of which judge's son was member *held* void); Williams v. Sinclair-Prairie Oil Co., 135 S.W. 2d 211 (Tex.Civ.App.) (entry of judgment by judge formerly counsel in case, apparently overlooked until after judgment on appeal, *held* void); Lee v. British-American Mortgage Co., 51 Tex.Civ.App. 272, 115 S. W. 320 (trial judge interested, and formerly of counsel in case, no objection raised, judgment *held* void).

In all these cases, and in others which might be cited, the disqualifying factors were insignificant compared with the enormity revealed by the record before us. If ever there could be conduct creative of "doubt on the part of the public, which would tend to lessen its faith and trust in the integrity of the courts", Boxley v. Wright, supra, and "to weaken the confidence of the public in the integrity of the court", State ex rel. Garrett v. Freeman, supra, the conduct before us is of that character.

Nothing can more encourage those disposed to make justice a matter of bargain and sale than to hold that, if they maintain with sufficient secrecy the corrupt agreement, they may get judgments secure against attack, except upon proof that there was corrupt motivation in the particular decision. In the interest of justice, of integrity, of public confidence in the due administration of justice, it should be the law that no man so deaf to the obligations of a judge as to put his vote at the command of another should be permitted to effectuate judgments outlasting the revelation of his infamy. We cannot be more deaf to the call of concern for probity than administrative adjudicators are permitted to be. Cf. Berkshire Employees' Association, etc. v. National Labor Relations Board, 121 F.2d 235 (3d Cir.).

The "shambles" consideration, of course, argues persuasively against carrying the constitutional command to its logical terminus. However, the shambles need not be so sanguinary as argument urged they must be. In the first place, a large share of the decisions in which Mr. Justice Corn cast the fifth vote represent merely compliance with a custom once followed in this court to let judgment be entered on the vote of any five members, without the express participation of the other four justices, when no question of the correctness of the decision was raised by any one. There is no reason to consider these decisions suspect. Only if a judgment was carried by Mr. Justice Corn's fifth vote, against a dissent, was that vote truly decisive, calling for application of the principle of disqualification. In this way, the area of the shambles would be reduced substantially.

In the second place, the "shambles" approach, with its emphasis upon the protection of those innocently trusting the legitimacy of decisions fair on the face, essentially is an appeal to the principle underlying the rule which safeguards those acting in reliance upon the apparently authoritative acts of putative public officers and employees. It always has been the rule that the de facto principle protects only those who change position believing in the supposedly de jure character of the officer or the employee. State v. Carroll, 38 Conn. 449; Herkimer v. Keeler, 109 Iowa 680, 81 N.W. 178; Heyland v. Wayne Independent Sch. Dist., 231 Iowa 1310, 4 N.W.2d 278; Carpenter v. Clark, 217 Mich. 63, 185 N.W. 868; State ex rel. Cosgrove v. Perkins, 139 Mo. 106, 40 S.W. 650; Alleger v. School Dist. No. 16, (Mo.App.) 142 S.W.2d 660; Oliver v. Mayor etc. of Jersey City, 63 N.J. L. 634, 44 A. 709, 48 L.R.A. 412; Vestry of St. Luke's Church v. Mathews, 4 Desaus. Eq. (S.C.) 578, 6 Am.Dec. 519; Manning v. Harlan, (Tex.Civ.App.) 122 S.W.2d 704; Gambill v. City of Denton, (Tex.Civ.App.) 215 S.W.2d 389; Tooele County v. DeLaMare, 90 Utah 23, 39 P.2d 1051. In such a case, the language of the court in City of Lawrence v. MacDonald, 318 Mass. 520, 62 N.E.2d 850, 161 A.L.R. 955, 956, is apt:

" * * * Reason and practical considerations of justice alike require that when in the trial of a cause the question

arises whether a person who was not the holder of an office de jure was an officer de facto, at least the burden of going forward with evidence of that fact, if not indeed the true burden of proof itself, should rest upon the party asserting the fact."

\* \* \* \* \* \*

" \* \* \* If the respondents desired to make this contention (and it does not appear that they desired so to do), it was at least incumbent upon them to go forward with the necessary evidence, and it may well be that the actual burden of proof was upon them."

Supportive of the same view are Sandlin v. Dowdell, 143 Ala. 518, 39 S. 279, 5 Ann. Cas. 459; Daugherty v. Garner, 169 Ark. 368, 275 S.W. 706; Buck v. Hawley & Hoops, 129 Iowa 406, 105 N.W. 688; Goulding v. Clark, 34 N.H. 148; Hughes v. Long, 119 N.C. 52, 25 S.E. 743; Biencourt v. Parker, 27 Tex. 558; McMillan v. Forsythe, 47 Utah 571, 154 P. 959; Tooele County v. DeLaMare, supra.

It does not seem an intolerably heavy burden to require one claiming reliance upon a contested decision carried by the vote of a judge confessedly an intellectual bondservant to a cynically corrupt master to show, at least *prima facie,* that neither he, nor one in whose shoes legally he must stand, was charged with notice of the judge's disqualifying subservience.

Tested by this principle, the stipulation submitted in this case does not carry the respondent's burden. While it affirms that the respondent did not know of the corrupt agreement between Corn and his familiar spirit, it is silent concerning whether she had reason to inquire thereabout, a condition which, under our statute, 25 O.S. (1961) § 13, and by the common law, is as effective a source of notice as is knowledge. And the stipulation is completely silent as to the status of the petitioner's brother, Victor C. Johnson. With whatever notice he possessed, she, too, is charged, at least as to that portion of the estate coming to her through him, if not as to all. Therefore, it seems to me, the requirements specified in City of Lawrence v. MacDonald, supra, have not been met.

In line with these principles, it would have been my view that the judgment, under the terms of the stipulation, should be for the petitioner, with the remedial steps to be determined by further consideration on the part of the court, as provided by the stipulation. But, since a clear majority of my brethren are convinced that the prophylactic of holding Mr. Justice Corn generally disqualified to sit in judgment can not be sufficiently diluted by the de facto principle to obviate the likelihood of the destruction of much clean tissue along with that which truly was infected, I yield to their opinion respecting the ruling properly to be entered. I content myself with this indication, for such use as it may have, of what would have been my judgment as to the applicable law, uncorrected by the collective wisdom of the court. As I see it, the only practical difference between the two positions concerns the burden of producing evidence upon the various issues of extrinsic fraud which may arise out of decisive participation in judgment by one whose disqualification is held in secrecy at the time of decision. I am not willing, upon this narrow ground, to stand adamantly in opposition to the views of able colleagues. Therefore, I concur in the result, but not in all the views expressed in the opinion or in the syllabi.

I have been authorized to state that SAMUEL T. ALLEN, Special Justice concurs in the views herein expressed.